**UNITED CHURCH BOARD FOR WORLD MINISTRIES, et al., Plaintiffs,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Defendant.**

Civ. A. No. 84–3273.

United States District Court, District of Columbia.

Sept. 16, 1985.

Cornish F. Hitchcock, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., Paul M. Neuhauser, Iowa City, Iowa, for plaintiffs.

Ronald Massumi, Ruth Eisenberg, Office of Gen. Counsel, S.E.C., Washington, D.C., for defendant.

## OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on plaintiffs' motion for summary judgment, defendant's opposition thereto and cross-motion for summary judgment, plaintiffs' reply and opposition to the cross-motion, and the entire record herein. For the reasons stated below, the Court grants plaintiffs' motion for summary judgment and denies the cross-motion of defendant.

### Statement of Facts

Plaintiff filed the instant action for declaratory and injunctive relief, challenging the procedures used by defendant Securities and Exchange Commission ("SEC") in revising its Rule 14a–8. Plaintiffs alleged that a specific amendment to Rule 14a–8 was adopted without adequate notice, without adequate explanation or analysis of public comments, and without adequate support in the record. Complaint ¶ 1.

In general, Rule 14a–8 regulates the inclusion of shareholder proposals in proxy materials. 17 C.F.R. § 240.14a–8. The amendment in question involves Rule 14a–8(c)(12), which allows issuers to omit a shareholder proposal from their proxy materials in certain circumstances. Prior to the SEC's revision, Rule 14a–8(c)(12) read as follows:

> If substantially the same proposal has previously been submitted to security holders in the issuer's proxy statement and form of proxy relating to any annual or special meeting of security holders held within the preceding 5 calendar years, it may be omitted from the issuer's proxy materials relating to any meeting of security holders held within 3

calendar years after the latest such previous submission:

*Provided, That*—(i) If the proposal was submitted at only one meeting during such preceding period, it received less than 3 percent of the total number of votes cast in regard thereto; or

(ii) If the proposal was submitted at only two meetings during such preceding period, it received at the time of its second submission less than 6 percent of the total number of votes cast in regard thereto; or

(iii) If the proposal was submitted at three or more meetings during such preceding period, it received at the time of its latest submission less than 10 percent of the total number of votes cast in regard thereto....

17 C.F.R. § 240.14a–8(c)(12).

In October 1982, the SEC published a notice of proposed rulemaking that proposed amendments to, or the abolition of, Rule 14a–8. 47 Fed.Reg. 47,420 (1982) (proposed Oct. 26, 1982). In response to the overall notice, the SEC received 397 comments. SEC Division of Corporate Finance, Summary of Comments: Shareholder Proposal Release at 1.

Thereafter, the SEC issued a final rule on August 16, 1983, amending Rule 14a–8. The final rule adopted two specific amendments to subsection (c)(12). First, the opening phrase was changed to read, "If the proposal deals with substantially the same subject matter as a prior proposal". Second, the final rule raised two of the three threshold percentages which must be obtained for a shareholder proposal to be published in subsequent years. The three-percent threshold required of a first-time proposal was raised to five percent and the six-percent threshold required for a second-time proposal was raised to eight percent. The ten percent threshold required for a third-time proposal was retained. 48 Fed. Reg. 38,218, 38,223 (1983).

In the statement accompanying the final rule, the SEC explained that the percentage thresholds were raised because of "the increased voting activities of institutional investors with respect to security holder proposals and the greater potential support for such proposals." *Id.* at 38,221.

The new rule applied to shareholder proposals submitted for inclusion in proxy materials that were filed preliminarily with the SEC on or after January 1, 1984. *Id.* at 38,183.

In their motion for summary judgment, plaintiffs state that but for the revision in the threshold percentages, their individual proposals would have garnered enough votes to permit resubmission of a new vote the following year.[1] Under the new rule, plaintiffs must wait at least three years before resubmitting their proposals.

Plaintiffs request that the Court vacate the revision of the threshold percentages because plaintiffs were denied administrative due process as required under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 (1977). Specifically, plaintiffs contend that the percentages in Rule 14a–8(c)(12) were revised without (1) adequate notice of the proposed change, (2) adequate explanation of the SEC's basis and reasons

---

1. Plaintiffs The American Baptist Home Mission Society; General Synod of the Reformed Church in America; Sisters of St. Dominic of Blauvelt, New York; and Oregon Province of the Society of Jesus submitted a proposal in the spring of 1983 to American Telephone & Telegraph Company. The proposal received 4.08 percent of the shareholder votes cast on its first submission. Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue, ¶¶ 17–20.

Plaintiff General Synod of the Reformed Church in America submitted a proposal at the annual meetings of Perkin-Elmer Corporation in November 1982 and November 1983. The proposal received 7.1 percent of the votes cast on its second submission. *Id.* at ¶¶ 21–22.

Plaintiff United Church Board for World Ministries submitted a proposal at the annual meeting of International Business Machines Corporation in the spring of 1984. The proposal received 3.34 percent of the votes cast on its first submission. *Id.* at ¶¶ 23–24.

Plaintiffs United Church Board for World Ministries and The American Baptist Home Mission Society submitted a proposal in the spring of 1984 to Chevron Corporation shareholders. The proposal received 4.11 percent of the votes cast on its first submission. *Id.* at ¶¶ 25–26.

or adequate support in the record, and (3) provision for prospective application only.

### Conclusions of Law

■ The APA requires a notice of proposed rulemaking to contain "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3).

Whether notice is adequate depends on the particular circumstances of each case. "[T]he answer ... must turn on how well the notice that the agency gave serves the policies underlying the notice requirement." *Small Refiner Lead Phase-Down Task Force v. Environmental Protection Agency*, 705 F.2d 506, 547 (D.C.Cir.1983).

The Court of Appeals for the District of Columbia Circuit has interpreted the APA notice requirements to serve three basic purposes. First, the notice-and-comment procedure improves the quality of agency rulemaking by testing proposed rules through exposure to public comments. Second, the notice requirements provide an opportunity to be heard, which is basic to fundamental fairness. Third, notice and comments allow affected parties to develop a record of objections for judicial review. *Id.*

Notice in the instant case consisted entirely of a two-sentence request for comments on "appropriate levels" for the percentage thresholds. Specifically, the SEC stated: "From time to time, the Commission has received suggestions from proponents and issuers alike that the percentage tests reflected in Rule 14a–8(c)(12) should be revised. The Commission is requesting comment on the question of the appropriate levels for the percentage tests." 47 Fed. Reg. at 47,430.

Adequate notice must reveal the agency's views "'in a concrete and focused form so as to make criticism or formulation of alternatives possible.'" *Small Refiner Lead Phase-Down Task Force v. Environmental Protection Agency*, 705 F.2d at 548 (quoting *Home Box Office, Inc. v. Federal Communications Commission*, 567 F.2d

9, 36 (D.C.Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977)). As stated previously, an important reason for adequate notice is to ensure informed agency decision making. Therefore, "[a]gency notice must describe the range of alternatives being considered with reasonable specificity. Otherwise, interested parties will not know what to comment on, and notice will not lead to better-informed agency decisionmaking." *Id.* at 549.

The notice of proposed rulemaking in the instant action was not "'sufficiently descriptive of the 'subjects and issues involved' so that interested parties may offer informed criticism and comments.'" *Simmons v. Interstate Commerce Commission*, 757 F.2d 296, 300 (D.C.Cir.1985) (quoting *Ethyl Corporation v. Environmental Protection Agency*, 541 F.2d 1, 48 (D.C.Cir.), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976)). The notice did not propose new percentage thresholds. Nor did it reveal the theories that prompted the SEC to propose a change. The agency revealed nothing specific to which the public could comment. The notice merely requested suggestions on appropriate percentage tests. Not even a clue was given as to whether the agency proposed the percentages to be raised, lowered, or maintained.

The comments themselves evidence the vagueness of the notice. Many of the commentators, while proposing specific increases in the percentage thresholds, failed to give any reason for doing so. Those who did explain, limited their reasoning for raising the percentages to the time and expense of publishing shareholder proposals. Nowhere in the comments did anyone suggest that the percentages be raised because of increased voting activities of institutional shareholders. Indeed, information on institutional investors was mentioned only by one commentator who proposed *lowering* the percentages. The basis of the SEC's decision, therefore, was not prompted by the comments received. Even

someone monitoring the comments could not have responded to the agency's theory.

In its motion for summary judgment, the SEC argues the soundness of its decision and cites several outside sources, all of which apparently were available to the SEC before the published notice of proposed rulemaking.[2] *See* Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiffs' Motion for Summary Judgment ("Defendant's Motion") at 5–6, 28–34. This leads the Court to believe that the SEC's decision to raise the percentage thresholds was based on previously formed assumptions without revealing those assumptions for public scrutiny.

Failure to make known agency views at the time of publication of notice circumvents the purpose of the APA notice requirements. Proposed rule changes cannot be "tested" when the public is unaware of both the proposed revision and the theory under which the agency makes its proposal.

■ A general request for comments is not adequate notice of a proposed rule change. Interested parties are unable to participate meaningfully in the rulemaking process without some notice of the direction in which the agency proposes to go. *See Forester v. Consumer Product Safety Commission,* 559 F.2d 774, 787 (D.C.Cir. 1977) (Notice must afford "interested parties a reasonable opportunity to participate in the rulemaking process.").

The SEC argues that its direction was unknown at the time of publication of notice and that the wording of the notice encouraged comments from all sides of the issue, which would develop a complete record for informed decision making. Defendant's Motion at 19 n. 11. The Court's decision should not discourage agencies from developing a complete record before issuing a final rule change. The manner of

compiling that record, however, must allow for concrete criticism and comments.

If the SEC's direction was unknown, the agency was unprepared to propose a revision, let alone issue a final rule change. After receiving general comments, the SEC should have invited comment on a specific revision of the percentage thresholds and the agency's theory for the proposal. Such action would have tested properly the agency's decision. Any objections to the specific proposal then could have been raised and the percentages adjusted accordingly.

The Court also finds the notice of proposed rulemaking ambiguous. The SEC allegedly proposed two changes to Rule 14a–8(c)(12): a change in the introductory phrase and a change in the percentage thresholds. The former proposed change was explained under a subheading entitled "Rule Changes Under Consideration." 47 Fed.Reg. at 47,429–30. The latter change, however, was listed under a different subheading entitled "Other Issues." *Id.* at 47,430.

The SEC argues that the latter subheading reasonably should be interpreted as meaning "Other Issues Under Consideration." The Court disagrees.

Not only did the SEC separate the two notices, the agency also published a draft text that included the proposed revision of the introductory phrase of subsection (c)(12) but not any change in the percentage thresholds. *Id.* at 47,432. The SEC argues that it clearly stated in the background section of the notice of proposed rulemaking that all proposed changes would not be in the draft text. *See id.* at 47,421. The introduction of the draft text, however, states that "[i]n accordance with the foregoing, Title 17, Chapter II of the Code of Federal Regulations is proposed to be amended as follows". *Id.* at 47,430. No amendment to the percentages followed. In addition, several pages earlier, in the

---

**2.** The sources included Schwartz & Weiss, *An Assessment of the SEC Shareholder Proposed Rule,* 65 Geo.L.J. 635 (1977); Investor Responsibility Research Center, Inc., *How Institutions Voted on Shareholder Resolutions in the 1982 Proxy Season* (1982); and Staff Report on Corporate Accountability (1980).

section discussing changes to Rule 14a–8(c), the agency mentioned that changes to subsection (c) "under consideration by the Commission are reflected in [the draft text]." The SEC's intent to specifically revise the percentage thresholds, therefore, was unclear. *See American Federation of Labor and Congress of Industrial Organizations v. Donovan*, 757 F.2d 330, 339 (D.C.Cir.1985).

The comments again evidence the ambiguousness of the notice. While the SEC received 66 comments on the percentage thresholds, 43 letters, or 65 percent, were from issuers. Few comments were received from institutional shareholders, or shareholders in general, who would be most affected by a revision. If notice were given of an increase in the percentage thresholds, more shareholders likely would have responded. *See Chocolate Manufacturers Association v. Block*, 755 F.2d 1098, 1105 (4th Cir.1985). The SEC would have received more comments from those likely to oppose the proposal, rather than simply favorable comments from issuers.

Furthermore, none of the commentators presented any data to support their suggestions on the appropriate percentage levels. Few gave any reasons at all.

The general nature of the comments and the absence of greater shareholder response implies fairly that interested parties thought a future proposal was forthcoming and that the present notice and comments would be used to determine if any revision were necessary. *See Mobil Oil Corporation v. Federal Power Commission*, 483 F.2d 1238, 1244 (D.C.Cir.1973). When interested parties are unaware that the present rulemaking procedures will result in specific regulations, the purposes of the APA notice requirements cannot be served.

The Court therefore grants plaintiffs' motion for summary judgment based on inadequate notice of proposed rulemaking. The Court need not consider plaintiffs' other arguments. An appropriate order to this effect was filed on September 13, 1985.