**UNITED CHURCH BOARD FOR WORLD MINISTRIES, et al., Plaintiffs,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Defendant.**

Civ. A. No. 84–3273.

United States District Court, District of Columbia.

Nov. 25, 1986.

Cornish F. Hitchcock, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., Paul M. Neuhauser, Iowa City, Iowa, for plaintiffs.

Thomas L. Riesenberg, Sp. Counsel, S.E.C., Washington, D.C., for defendant.

## OPINION

JUNE L. GREEN, District Judge.

This matter is before the Court on plaintiffs' application for costs and attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412 (1985). For the reasons set forth below, the Court awards plaintiffs $17,908.75 in attorneys' fees and costs.

### I. *Background*

On October 25, 1984, plaintiff filed the instant action for declaratory and injunctive relief, challenging the procedures used by defendant Securities and Exchange Commission ("SEC") in revising its Rule 14a–8. Plaintiffs alleged that the SEC adopted a specific amendment to Rule 14a–8 without adequate notice, without adequate explanation or analysis of public comments, and without adequate support in the record. Complaint ¶ 1.

Rule 14a–8 regulates the inclusion of shareholder requests in proxy materials. 17 C.F.R. § 240.14a–8. This action involves the amendment of Rule 14a–8(c)(12) which allows issuers to omit a shareholder proposal from their proxy material under certain circumstances. Before the SEC revised Rule 14a–8(c)(12), it provided in relevant part:

> If substantially the same proposal has previously been submitted to security holders in the issuer's proxy statement and form of proxy relating to any annual or special meeting of security holders held within the preceding 5 calendar years, it may be omitted from the issuer's proxy materials relating to any meeting of security holders held within 3 calendar years after the latest such previous submission:
>
> *Provided, That*—(i) If the proposal was submitted at only one meeting during such preceding period, it received less than 3 percent of the total number of votes cast in regard thereto; or
>
> (ii) If the proposal was submitted at only two metings during such preceding period, it received at the time of its second submission less than 6 percent of the total number of votes cast in regard thereto; or
>
> (iii) If the proposal was submitted at three or more meetings during such preceding period, it received at the time of its latest submission less than 10 percent of the total number of votes cast in regard thereto. . . .

17 C.F.R. § 240.14a–8(c)(12).

The SEC published a notice of proposed rulemaking that proposed amendments to, or the abolition of, Rule 14a–8 on October 26, 1982. *See* 47 Fed.Reg. 47,420 (1982). The notice consisted of a two-sentence request for comments on "appropriate levels" for percentage thresholds. Specifically, the SEC stated: "From time to time, the Commission has received suggestions from proponents and issuers alike that the percentage tests reflected in Rule 14a–8(c)(12) should be revised. The Commission is requesting comment on the question of the appropriate levels for the percentage tests." 47 Fed.Reg. at 47,430. In response to the overall notice, the SEC received 397 comments. SEC Division of

Corporate Finance, Summary of Comments: Shareholder Proposal Release at 1.

Sometime later, the SEC issued a final rule on August 16, 1983, amending Rule 14a–8. The final rule adopted two specific amendments to subsection (c)(12). First, the opening phrase was changed to read, "If the proposal deals with substantially the same subject matter as a prior proposal." Second, the final rule raised two of the three threshold percentages which must be obtained for a shareholder proposal to be published in subsequent years. The 3 percent threshold required of a first-time proposal was raised to 5 percent and the 6 percent threshold required for a second-time proposal was raised to 8 percent. The 10 percent threshold required for a third-time proposal was retained. 48 Fed. Reg. 38,218, 38,223 (1983).

According to the SEC, the percentage thresholds were raised because of "the increased voting activities of institutional investors with respect to security holder proposals and the greater potential support for such proposals." *Id.* at 38,221. The new rule applied to shareholder proposals submitted for inclusion in proxy materials that were filed preliminarily with the SEC on or after January 1, 1984. *Id.* at 38,183.

Plaintiffs initiated this suit in response to the raising of the percentage thresholds and subsequently moved for summary judgment. Plaintiffs stated that but for the revision in the threshold percentages, their individual proposals would have garnered enough votes to permit resubmission of a new vote the following year. For example, plaintiffs The American Baptist Home Mission Society; General Synod of the Reformed Church in America; Sisters of St. Dominic of Blauvelt, New York; and Oregon Province of the Society of Jesus submitted a proposal in the spring of 1983 to American Telephone & Telegraph Company. The proposal received 4.08 percent of the shareholders votes cast on its first submission. Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue, ¶¶ 17–20. Under the new rule, plaintiffs would have to wait at least three years before resubmitting their proposals.

Plaintiffs requested that the Court vacate the revision of the threshold percentages because they were denied administrative due process as required under the Administrative Procedure Act ("APA"), 5 U.S.C. § 553 (1977). On September 16, 1985, the Court granted plaintiffs' motion for summary judgment and held that notice of the proposed rulemaking was inadequate to support the revisions in the rule. *See United Church Bd. for World Ministries v. SEC,* 617 F.Supp. 837 (D.D.C.1985).

## II. Discussion

Plaintiffs have now moved for an award of attorneys' fees and expenses under section 2412(d)(1)(A) of the EAJA. Section 2412(d)(1)(A) provides:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

A party must satisfy certain financial requirements in order to bring a fee petition under this section. Section 2412(d)(2)(B). To qualify under the statute, (1) the net worth of an organization cannot exceed $7 million at the time the civil action was filed and (2) the organization cannot have more than 500 employees.

It appears to the Court that all of the plaintiffs meet these conditions. As noted in defendant's opposition to the fee application, all but one of the plaintiffs failed to state that they employed less than 500 persons in their original affidavits regarding their eligibility under the EAJA. However, plaintiffs rectified this situation by filing additional affidavits demonstrating clearly their eligibility under the statute. *See* Ex-

hibits I–L, Supplemental Affidavits of Plaintiffs attached to Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for an Award of Attorneys' Fees. Accordingly, the Court finds that plaintiffs fall within the meaning of "party" under the EAJA.

■ Plaintiffs also qualify as "prevailing parties" for purposes of section 2412(d)(1)(A). This Court agreed with plaintiffs' principal legal argument that the SEC had violated the notice requirements of the APA when it issued a final rule changing the percentage thresholds in Rule 14a–8(c)(12) without providing the public with adequate notice that such a change was contemplated in the underlying rulemaking and granted the complete relief sought by them, *i.e.* reinstatement of the former percentage thresholds. As a result of the Court's decision, the SEC voted unanimously on November 14, 1985, to reinstate the former thresholds and take no further action at that time. The plaintiffs were then able to sponsor and support shareholder resolutions which otherwise could not have been submitted to shareholders under the amended Rule 14a–8(c)(12). The Court also notes that defendant does not contest the plaintiffs' qualifications as prevailing parties.

The real point of contention appears to be whether or not the position taken by the SEC during the litigation of this suit was "substantially justified" as required by the EAJA. Plaintiffs argue that it was not. They base their argument on the fact that "the notice of the proposed rulemaking simply listed [the resubmission thresholds] as an 'issue' on which comment was invited, without signalling what problems the agency perceived with the current thresholds and whether it believed the percentages should be raised or lowered." Motion for Attorneys' Fees at 6. The subsequent raising of these thresholds by the SEC, they contend, violated the requirements of the Administrative Procedure Act which requires a notice of proposed rulemaking to contain "either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. § 553(b)(3). The plaintiffs argue, therefore, that the SEC's position in this litigation was not "substantially justified" and that they are entitled to an award of attorneys' fees under the EAJA.

However, the SEC stands firm on its position taken throughout the course of this litigation—that the proposed rulemaking notice gave adequate notice; therefore, the Commission did not have to go through a second comment process to raise the resubmission thresholds by 2 or 3 percent. Furthermore, the SEC contends that its position during this dispute was reasonable since it "stated in its notice of proposed rulemaking that it was engaging in a fundamental re-examination of whether the Commission should regulate shareholders' right to access to their company's proxy statements and, if so, 'what the nature of such right should be.' " Defendant's Opposition at 6 (citation omitted). The Court disagrees.

■ A "court deciding [an] EAJA case must independently evaluate the [defendant's] position to determine whether it was substantially justified." *Cinciarelli v. Reagan,* 729 F.2d 801, 806 (D.C.Cir.1984). "Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based)...." 28 U.S.C. § 2412(d)(2)(D). The "position" of the government includes both the agency's underlying conduct and the litigation position of the agency. *See Natural Resources Defense Council v. EPA,* 703 F.2d 700, 706–12 (3d Cir.1983). The legislative history of the EAJA indicates that the test to determine whether or not the government's position is substantially justified is "slightly more stringent than one of reasonableness." *Spencer v. NLRB,* 712 F.2d 539, 558 (D.C.Cir.1983), *cert. denied,* 446 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984) (footnote omitted). Applying this standard, the Court concludes that the posi-

tion of the defendant was not substantially justified.

■ As explained in the Court's earlier opinion, "[w]hether notice is adequate depends on the particular circumstances of each case." *United Church Bd. for World Ministries v. SEC,* 617 F.Supp. at 839. "Adequate notice must reveal the agency's views 'in a concrete and focused form so as to make criticism or formulation of alternatives possible.'" *Id.* (citing *Small Refiner Lead Phase-Down Task Force v. EPA,* 705 F.2d 506, 548 (D.C.Cir.1983)). A close examination of the facts in the instant action led this Court to conclude that "[t]he notice of proposed rulemaking in the instant action was not 'sufficiently descriptive of the "subjects and issues involved" so that interested parties may offer informed criticism and comments.'" *Id.* (citing *Simmons v. ICC,* 757 F.2d 296, 300 (D.C.Cir.1985)).

The Court further stated:

> The Notice did not propose new percentage thresholds. Nor did it reveal the theories that prompted the SEC to propose a change. The agency revealed nothing specific to which the public could comment. The Notice merely requested suggestions on appropriate percentage tests. *Not even a clue was given as to whether the agency proposed the percentages to be raised, lowered, or maintained.*

*Id.*

It appears to the Court that the SEC's position in this case was clearly unreasonable and thus not substantially justified. The SEC's blatant disregard of the APA's notice requirements compels the Court to reach this conclusion. To hold otherwise would allow the SEC to circumvent the purposes of the APA notice requirements and thereby eviscerate the Act. Accordingly, the Court finds that the SEC's position in this case was not substantially justified; therefore, plaintiffs are entitled to attorneys' fees under the EAJA.

**A. Award of Attorneys' Fees**

■ Courts determine the appropriate award of attorneys' fees by establishing a "lodestar" rate, which is the number of hours expended reasonably, multiplied by the reasonable hourly rate. The Court may then adjust the lodestar rate upward or downward by use of a multiplier to reflect various factors. *National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1323 (D.C.Cir. 1982).

**1. Hourly Rate**

To establish the lodestar rate, the Court must determine a reasonable hourly rate. A reasonable hourly rate has been defined in this Circuit as "that prevailing in the community for similar work." *Copeland v. Marshall,* 641 F.2d 880, 892 (D.C.Cir. 1980) (en banc). Plaintiffs' attorneys each claim $89.73 per hour which represents an upward adjustment from the statutory $75 per hour rate allowed under section 2412(d)(1)(A). The fee adjustment is based on inflation, the quality of representation, and the result achieved in this case. Plaintiffs' counsel Cornish F. Hitchcock, Alan B. Morrison, and Paul M. Neuhauser submitted affidavits in support of their fee applications.

■ The "EAJA prescribes a maximum hourly rate of $75 for attorney's fees unless the court determines that an increase in the cost-of-living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii) (1982). An award of an upward adjustment of the statutory fee rate lies within the sole discretion of the Court. Given the underlying circumstances in this action, the Court finds that plaintiffs' attorneys are not entitled to such an adjustment. The Court considered the educational background, extensive federal court litigation experience and expertise in the administrative and securities law of all three of plaintiffs' attorneys in its determination of the appropriate fee. The Court also took into account the increase in the cost of living and the fact that the result in this case was achieved on the merits.

These factors, however, do not compel the Court to reach a different conclusion. Accordingly, the Court finds that plaintiffs' attorneys are entitled to the maximum hourly fee of $75.

### 2. *Number of Hours*

"Lawyers claiming fees from the government must exercise 'billing judgment.'" *Action on Smoking and Health v. CAB*, 724 F.2d 211, 220 (D.C.Cir.1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). "Prevailing counsel must 'make a good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary.'" *Id.* A court must make appropriate reductions if a fees application contains unreasonably expended hours. With these principles in mind, the Court will derive an hourly total for each of the plaintiffs' attorneys in this case.

### a. *Cornish Hitchcock*

 Mr. Hitchcock was the principal attorney in this litigation and claims a total of 168.40 billable hours. He submitted affidavits and detailed billing records which outlined the basis of his claim. The claims can be broken into the following general categories:

| Task | Hours |
|---|---|
| Examine pertinent facts and case law; draft complaint and prepare for filing | 48.07 |
| Prepare summary judgment motion and memorandum of law, Rule 1–9(i) statement, affidavits, portions of agency record | 77.08 |
| Review agency's brief, prepare reply brief | 16.25 |
| Post-judgment matters | 2.00 |
| EAJA application and reply memorandum to defendant's opposition to fee application | 25.00 |
| Total | 168.40 |

Affidavit of Cornish F. Hitchcock attached as Exhibit A to Motion for Attorneys' Fees at 3; Supplemental Affidavit of Cornish F. Hitchcock attached as Exhibit M to Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for an Award of Attorneys' Fees at 2.

The defendant raises one objection to the number of hours claimed by Mr. Hitchcock. Defendant objects to Mr. Hitchcock's inclusion of fees for the filing of the EAJA motion. It argues that "[i]n order to be awarded such fees, this Court must find that the Commission's decision to defend against the EAJA fee application is, in itself, not 'substantially justified.'" Defendant's Opposition at 18. Defendant cites *Cinciarelli v. Reagan*, 729 F.2d at 809–10, as authority for this proposition. The Court finds, however, that the defendant's reliance on *Cinciarelli* is misplaced.

The court in *Cinciarelli* stated expressly:

> Whenever the government defends an EAJA claim on the ground that its litigation position in the underlying action was substantially justified and the government loses, the court has in effect decided that this position was unreasonable or, at best barely reasonable. It would seem to follow in most cases that the decision to contest the EAJA application could not have been substantially justified because the position that the government claimed was "substantially justified" in the underlying action will have been shown to have been unreasonable. *In these cases* the victorious EAJA plaintiff should receive fees for its pursuit of the EAJA action.

*Id.* at 809.

In the instant action, this Court faces the identical situation addressed above by the *Cinciarelli* court. Accordingly, the Court finds that plaintiffs are entitled to compensation for the reasonable expenses incurred by filing this EAJA application. Furthermore, the Court concludes that Mr. Hitchcock's entire claim for attorneys' fees is a reasonable one. At the hourly rate of $75, plaintiffs are entitled to $12,630 for Mr. Hitchcock's services.

### b. *Alan B. Morrison*

 Mr. Morrison was responsible for reviewing and editing all drafts of plead-

ings, motions and memoranda that were prepared by Mr. Cornish Hitchcock, the principal attorney. Mr. Morrison also discussed the issues and drafts of memoranda with Mr. Hitchcock. Mr. Morrison limits his claim for billable hours to 9 hours and 15 minutes and excludes any subsequent consultations with Mr. Hitchcock concerning this EAJA application. The Court finds that Mr. Morrison's claim is reasonable and sufficiently documented for the purposes of this fee application. Accordingly, the plaintiffs are entitled to $693.75 for Mr. Morrison's services.

### c. *Prof. Paul M. Neuhauser*

Prof. Neuhauser acted as "co-counsel" with Mr. Hitchcock in this matter. According to his affidavit, he solicited Mr. Hitchcock and the Public Citizen Litigation group to act as co-counsel. Supplemental Affidavit of Paul M. Neuhauser attached as Ex. N to Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for an Award of Attorneys' Fees ("Supplemental Neuhauser Affidvit") ¶ 8. Prof. Neuhauser claims 162 billable hours for his work in this case.

Defendant objects to Prof. Neuhauser's fee application on several grounds. First, defendant asserts that Prof. Neuhauser's application "contains only very broad summaries" of his work and is documented insufficiently. Defendant's Opposition at 17. For example, they point to the fact that "the application lists 19.25 hours, from February through September 1984, under the general category of '[c]onsulting with the clients on the matters raised by the prospective lawsuit.'" *Id.* Second, the defendant objects to the 70 hours claimed in the Professor's application under the caption "[r]esearch and preparation of memorandum of law concerning the legal issues raised under the Administrative Procedure Act by the SEC action in promulgating the rule change." *Id.* Defendant contends that "[t]here is no explanation of how or why almost half of Mr. Neuhauser's work was performed nearly a year before the

litigation began." *Id.* These objections appear to be valid.

"In the preparation of fee applications it is insufficient to provide the District Court with very broad summaries of work done and hours logged." *National Association of Concerned Veterans,* 675 F.2d at 1327. "A 'fee applicant bears the burden of … documenting the appropriate hours expended … and should maintain billing time records in a manner that will enable a reviewing court to identify claims.'" *Action on Smoking and Health,* 724 F.2d at 220 (quoting *Hensley v. Eckerhart,* 461 U.S. at 438, 103 S.Ct. at 1942.) "Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *National Association of Concerned Veterans,* 675 F.2d at 1327.

It appears to the Court that Prof. Neuhauser's fee application is not only deficient in its documentation of the hours expended but the number of hours claimed is unreasonable and excessive. The Court notes that Prof. Neuhauser's initial fee application contained *eight* very broad categories of tasks the nature of which he failed to document with specificity. *See* Neuhauser Affidavit ¶ 3. Prof. Neuhauser attempted to rectify this problem of documentation with a submission of a supplemental affidavit. The supplemental affidavit, however, only seems to provide more ammunition with which to fire at his fee application.

In the supplemental affidavit, Prof. Neuhauser admits that he does not "maintain a 'Lawyers Diary,' but keep[s] track of the hours [he] spends on various matters only when [he] think[s] it is necessary and then only in an informal way." Supplemental Neuhauser Affidavit ¶ 3. Furthermore, Prof. Neuhauser admits that the 70 hours claimed for research and preparation of the memorandum of law concerning Rule 14a8-c and 15 of the 19¼ hours claimed for client consultation were determined without the aid of contemporaneous records, *id.* ¶¶ 3-5, and are at best estimates of the

time expended. "Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees." *National Association of Concerned Veterans,* 675 F.2d at 1327 (*quoted in Action on Smoking and Health,* 724 F.2d at 220).

Furthermore, the 70 hours claimed by Prof. Neuhauser for preparation of the memorandum of law concerning Rule 14a8–c can be disallowed on another basis. The contents of the memorandum of law referred to by Prof. Neuhauser were incorporated subsequently into *two* letters written by him to the SEC challenging certain shareholder proposal rules. Only one of those letters concerned the issues disputed in this litigation and of that letter, only *10* of 25 pages address the Rule 14a8–12(c) amendments challenged in this litigation. *See* January 26, 1984 Letter to SEC attached to Supplemental Neuhauser Affidavit at 14–24. Moreover, this letter was written 10 months prior to the initiation of this suit "to raise their legal arguments first before the Commission." Plaintiffs' Reply to Defendant's Opposition to Plaintiffs' Motion for an Award of Attorneys' Fees ("Plaintiffs' Reply") at 11.

Plaintiffs insist that the 70 hours spent preparing the memorandum of law "should be considered as an essential part of the litigation, rather than as time spent litigating the matter before the agency, since the research would have had to be performed prior to filing a complaint or summary judgment motion in any event." *Id.* at 12. The Court disagrees.

■ Prof. Neuhauser researched and prepared the memorandum of law and the two letters for use during an administrative proceeding before the SEC. Plaintiffs admit that this approach was taken to "give the Commission an opportunity to assess the strength of the APA claims" and to "avoid any argument about exhaustion of remedies which the agency might choose to raise in litigation." *Id.* A fee application can include expenses incurred in an administrative proceeding before the court suit, but that administrative proceed-

ing must have been an "adversary adjudication" as defined in 5 U.S.C. § 504(a). *See Muth v. Marsh,* 525 F.Supp. 604, 609 (D.D.C.1981). Since it appears that the administrative proceedings before the SEC were not adversarial in nature, the Court finds that the 70 hours attributable to work done in preparation for those proceedings is not recoverable under the EAJA.

■ In light of the foregoing, the Court finds that Prof. Neuhauser is not entitled to recover attorneys' fees for the 70 hours claimed for his work on the memorandum of law and the 15 hours claimed for client consultation from February through September 1984. Prof. Neuhauser, however, did document properly his claim for the remaining 4¼ hours designated for consultation with the plaintiffs, *see* Supplemental Neuhauser Affidavit ¶ 7; therefore, the Court will award him fees for this time.

■ As to the remaining 72¾ hours, the Court must make appropriate reductions since it finds that Prof. Neuhauser's fee application contains unreasonable and excessive hours. In particular, the Court finds the 40 hours claimed by Prof. Neuhauser for "[r]eview and revision of motion for summary judgment" to be unreasonable. Prof. Neuhauser provided sufficient documentation for only 30 of these hours. *See* Supplemental Neuhauser Affidavit ¶ 11. Prof. Neuhauser stated expressly that 10 of the 40 hours were only an estimate since he failed to make any contemporaneous record of that time. *Id.* For the reasons discussed previously, the Court will not compensate him for those 10 "estimated" hours.

■ Furthermore, the Court finds that given Prof. Neuhauser's limited role in this litigation, the remaining 30 hours should be reduced by 20 percent. A comparison of the time records of lead counsel, Mr. Hitchcock, and Prof. Neuhauser leads the Court to conclude that the former performed the majority of the work on the motion for summary judgment, including research, writing, and subsequent revisions. Plaintiffs' Reply at 13. The 20 percent reduc-

tion, though seemingly arbitrary, reflects the Court's sincere effort to balance the equities while avoiding a nitpicking examination of every minute claimed and each task performed. *See Copeland v. Marshall,* 641 F.2d 880, 903 (D.C.Cir.1980). The Court, therefore, finds that Prof. Neuhauser is entitled to compensation for only 24 hours for his work on the motion for summary judgment.

As to the remaining 32¾ hours claimed by Prof. Neuhauser for a variety of tasks, including review and revision of the complaint and reply memorandum, and consultations with the plaintiffs, the Court finds that these claims are reasonable and not excessive. In conclusion, the Court determines that Prof. Neuhauser should be compensated at an hourly rate of $75 for 61 hours expended reasonably on plaintiffs' behalf for a total award of $4,575.

### B. *Summary of Attorneys' Fees Award*

| Attorney | Hours Claimed | Deduction-Insuff. Documen. | Deduction-Mtn. for SJ | Rate | Total |
|---|---|---|---|---|---|
| Cornish Hitchcock | 168.40 | ——— | ——— | $75 | $12,630.00 |
| Alan B. Morrison | 9.25 | ——— | ——— | $75 | 693.75 |
| Paul M. Neuhauser | 162.00 | (85) | (16) | $75 | 4,575.00* |
| | Total Fees | = | $17,898.75 | | |

### C. *Costs*

 Section 2412(a) authorizes the Court to award costs to the prevailing party. *See* 28 U.S.C. § 2412(a). The plaintiffs' claim for reimbursement of the $10 in filing fees is uncontested by the defendant. Accordingly, the Court finds that defendant should be liable to plaintiff for $10 in costs.

### III. *Conclusion*

Plaintiffs were the prevailing parties in the underlying litigation, and defendant's position was not substantially justified. In accordance with the EAJA, the Court awards the plaintiffs attorneys' fees and costs. An appropriate order is attached.

### ORDER

Upon consideration of plaintiffs' motion for award of attorneys' fees, defendant's opposition thereto, plaintiffs' reply, defendant's supplemental opposition, the entire record herein, and for the reasons stated in the accompanying opinion, it is by the Court this 25th day of November 1986,

ORDERED that plaintiffs' motion for award of attorneys' fees is granted; and it is further

ORDERED that defendant pay plaintiffs $17,898.75 in attorneys' fees and $10 in costs, for a total of $17,908.75.

---

* 162 hours claimed—101 hours deducted = 61 hours at $75 = $4,575.00.