Sinh Thi NONG, et al., Plaintiffs,

v.

Janet RENO, et al., Defendants.

No. Civ.A. 96–2555 (RMU).

United States District Court,
District of Columbia.

Oct. 29, 1998.

28

Susan Au Allen, Paul Shearman Allen & Associates, Washington, DC, for plaintiffs.

Suzanne Claire Nyland, U.S. Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

URBINA, District Judge.

### Granting the Plaintiffs' Motion for Award of Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act

The plaintiffs, Sinh Thi Nong and her daughter Mei Ying Liang, sought mandamus and declaratory judgment relief against the United States Immigration and Nationalization Service ("INS") for agency inaction. Ultimately, the plaintiffs' INS matter received the appropriate attention, and Ms. Liang obtained her immigrant visa seven years after the application was originally approved by the INS. This matter is presently before the court upon the plaintiffs' application for attorney's fees and costs pursuant to the Equal Access to Justice Act ("EAJA"). For the reasons set forth herein, the plaintiffs' motion for attorney's fees and costs is granted in the amount of **$10,305.38**.

### I. Background

On April 11, 1991, Ms. Nong filed, for the second time, a preference immigrant relative visa petition with the INS so that Ms Liang, her then sixteen year old daughter, could live with her in the United States. The INS approved the visa application on June 5, 1991 and sent the approved application to the American Consulate at Guangzhou in Guangdong province, China ("Consulate"). The Consulate needed to verify Ms. Liang's status as Ms. Nong's daughter before the visa could be issued to Ms. Liang. Throughout a period of three and a half years, the Consulate made ten requests for a copy of Ms. Nong's A-file, but the INS failed to deliver the file. On November 8, 1996, Ms. Nong filed a complaint against the INS alleging that the agency unduly delayed her petition for an immigrant visa for her daughter by failing to send her INS A-file to the Consulate. On August 28, 1997, the court held a status hearing and inquired as to the status of the A-file. Subsequently, the court wrote a letter to James Kieffer at the INS requesting that he give immediate attention to producing the documents necessary for Ms. Liang to obtain her visa. The court administratively closed the case and granted the plaintiffs leave to reopen the file if Ms. Liang continued to have problems obtaining the visa. Ultimately, the A-file was sent to the Consulate, and Ms. Liang received her visa on May 13, 1998.

The plaintiffs subsequently filed an application for attorney's fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994). The plaintiffs argue that but for the aforementioned law suit and the

court's intervention, they would not have been able to compel the INS to forward a copy of Ms. Nong's A-file to the Consulate so that the mother/daughter relationship could be verified and Ms. Liang's visa could be issued to her. The defendants oppose the following aspects of the motion: (1) compensating the plaintiffs' attorney for expenses incurred after September 1997, (2) compensating the plaintiffs' attorney at a $133 hourly rate, and (3) compensating the plaintiffs' attorney for specific expenditures that they believe are unnecessary and burdensome Upon consideration of the relevant law as applied to the facts of this case, the court grants the plaintiffs' application for attorney's fees.

## II. Discussion

### A. Prevailing Party

In order to recover attorney's fees and costs under the EAJA, the plaintiffs must be the "prevailing party." *See* 28 U.S.C. § 2412(d)(1)(A). According to the EAJA, a plaintiff is a prevailing party as long as it is more probable than not that the government would not have performed the desired act but for the lawsuit. *See Chen v. Slattery*, 842 F.Supp. 597, 598 (D.D.C.1994) (citing *Public Citizen Health Research Group v. Young*, 909 F.2d 546, 550 (D.C.Cir. 1990)). Here, the defendants acknowledge that the INS's A-file was not provided to the American Consulate until after this litigation was initiated.[1] For more than three years, the Consulate's requests for the A-file went unfulfilled. It was only after the court sent a letter to the INS that the State Department finally received on September 16, 1997 Ms. Nong's A-file, which was subsequently sent to the Consulate. Because the court finds that the relief requested in Ms. Nong's lawsuit was more than likely granted only as a direct result of the court's intervention, the court concludes that the plaintiffs are the prevailing party in this case.

### B. Substantial Justification

Even where the plaintiffs are the prevailing party, the defendants may be re-lieved from paying the plaintiffs' attorney's fees if they can show that the conduct which led to the lawsuit was "substantially justified." *See* 28 U.S.C. § 2412(d)(1)(A). Specifically, the defendants must demonstrate that their conduct satisfies a reasonable person standard. *See Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). An agency's conduct is not substantially justified (1) if the impetus for agency action is the filing of a lawsuit, (2) if the agency cannot justify its delay in performing the desired action, or (3) if the amount of time needed to perform the specific action is disproportionate to established norms. In *Chen,* the court held that the INS acted unreasonably when it had all the documentation needed to issue the plaintiff's employment authorization document but failed to do so until three weeks after the plaintiff filed suit charging the agency with failure to adjudicate his employment eligibility application. 842 F.Supp. at 599. Moreover, the INS's failure to provide a reason for the delay further justified the conclusion that the agency acted unreasonably. *See id.* In another case against the INS, the court determined that the agency's two year delay in processing the plaintiff's application for adjustment of his status to a permanent resident alien was unreasonable given that the average processing time for such applications is 130 days. *See Nadler v. INS,* 737 F.Supp. 658, 661 (D.D.C.1989).

In the present case, the INS's failure to respond to the Consulate's request for Ms. Nong's A-file is not substantially justified. First, the INS had access to Ms. Nong's A-file during the three and a half years that the Consulate repeatedly made requests for a copy of the file, but the INS did not fulfill the Consulate's request until the court intervened upon the filing of the lawsuit. Second, the INS has never provided any explanation for its failure to respond to the Consulate's repeated requests.[2] Third, a representative from the Consulate acknowledged a delay in processing Ms. Nong's visa, given the fact that the Consulate had requested the A-file

---

**1.** *See* Defendants' Opposition to Plaintiffs' Motion for Award of Attorneys' Fees and Costs ("Def.Opp.") at 8.

**2.** *See* Def.Opp. at 7.

three years earlier.[3] The correspondence between the Consulate and the State Department establishes that three years is an unusual amount of time to process an A-file request.[4] In fact, it appears that all the officials involved in requesting or receiving Ms. Nong's A-file recognized that three years was an extraordinary amount of time to wait.[5] Finally, while Ms. Nong's application is different in nature, it is noteworthy that her visa application took over *seven years* to process in comparison to the two year period that the court determined was unreasonable in *Nadler*. On balance, the government's conduct was neither reasonable nor substantially justified, and the court, therefore, grants an award of attorney's fees and costs to the plaintiffs under the EAJA.

### C. Reasonableness of Request for Fees and Costs

 Under the EAJA, an appropriate attorney's fee is based on a lodestar rate. A lodestar rate is calculated by multiplying a reasonable hourly rate by a reasonable number of hours. *See United Church Bd. for World Ministries v. SEC*, 649 F.Supp. 492, 498 (D.D.C.1986). A court has the discretion to adjust the lodestar rate upward or downward by use of a multiplier to reflect various factors. *See National Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1323 (D.C.Cir.1982).

### 1. Reasonable Hourly Rate

The EAJA imposes a cap on the hourly rate for which an attorney may be compensated. *See* 28 U.S.C. § 2412(d)(2)(A). The amount of fees awarded is limited to $75 per hour unless the court determines that an increase in the cost of living as determined by the consumer price index (CPI) justifies a higher fee. *See Douglas v. Baker III*, 809 F.Supp. 131, 134 (D.D.C.1992). The increase in attorney's fees is calculated by dividing the CPI for the month when the attorney's services are completed by the CPI rate in October 1981, the month when the EAJA was enacted. This calculation results in the ratio of the price increase for the time period. *See id.* at 134–135. The maximum statutory rate of $75 per hour is multiplied by the ratio of the price increase to produce an adjusted hourly rate. *See id.* The formula appears below:

$$\text{Step 1:} \quad \frac{\text{CPI for month when services rendered}}{\text{CPI October 1981}} \quad = \quad \text{Ratio of Price Increase}$$

$$\text{Step 2:} \quad (\text{Ratio of Price Increase}) \, (\$75 \, \text{Price Cap}) \quad = \quad \text{Adjusted Attorney Rate}$$

The parties' computation of the adjusted rate for attorney's fees, however, conflicts. The plaintiffs seek $132.27 per hour for work in 1996, and $134.59 per hour for work in 1997 and 1998.[6] The defendants assert that the appropriate rate is $125.00 per hour for 1996, $125.95 per hour for 1997, and $126.58 per hour for 1998.[7] Because of this conflict between the parties, the court will compensate the plaintiffs' attorney based on an independent calculation of the adjusted rate pursuant to D.C. Circuit case law. The calculation appears below:

**1996 Adjusted Attorney Rate:**

**3.** *See* Def.Opp. Exhibit ("Ex.") D2 (in an e-mail sent from Thomas M. Ramsey from the Consulate to Melissa Arkley, the State Department liaison between the INS and the Consulate, Mr. Ramsey noted that the issuance of the visa was taking a long time given the lengthy period of time since the A-file was originally requested).

**4.** *See* Def.Opp.Ex. D2.

**5.** *See* Def.Opp.Ex. A at 8, C at 1, D1, D2.

**6.** *See* Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Motion for Award of Attorney's Fees and Costs ("Pl. Reply") at 8 (the rate of pay for 1998 is the same as for 1997 because CPI figures for 1998 are not yet available).

**7.** *See* Def.Opp. at 9.

Step 1: $$\frac{\text{CPI for December 1996 (161.6) [8]}}{\text{CPI at EAJA enactment (93.3) [9]}} = 1.73 \text{ (Ratio of Price Increase)}$$

Step 2: $$\frac{\text{(Ratio of Price Increase) (Price Cap)}}{(1.73)\ (\$75)} = \textbf{\$129.75} \text{ (1996 Adjusted Rate)}$$

**1997 and 1998 Adjusted Attorney Rate:[10]**

Step 1: $$\frac{\text{CP I for December 1997 (161.8) [11]}}{\text{(CPI at EAJA enactment (93.3)}} = 1.73 \text{ (Ratio of Price Increase)}$$

Step 2: $$\frac{\text{Ratio of Price Increase) (Price Cap)}}{(1.73)\ (\$75)} = \textbf{.\$129.75} \text{ (1997/1998 Adj. Rate)}$$

Thus, the court awards compensation to the plaintiffs' attorney for all years at the hourly rate of **$129.75.**

### 2. Reasonable Number of Hours

█ Under the EAJA, the prevailing party must submit a reasonable fee application for legal services with a good faith effort to exclude hours that are excessive or unnecessary. *See United Church Board,* 649 F.Supp. at 499. The court is authorized to make appropriate reductions if a fee application contains an unreasonable amount of expended hours. *See id.*

█ Here, the defendants object to the plaintiffs' inclusion of fees after September 9, 1997 with the exception of a charge billed on September 25, 1997 for reviewing the defendants' notice confirming transmittal of Ms. Nong's A-file. The defendants claim that the plaintiffs' compensation should terminate at September 1997 because the plaintiffs specifically filed suit against the INS to compel them to forward Ms. Nong's A-file to the Consulate. Therefore, because the specific relief sought was fulfilled in September 1997, the defendants argue that compensation for

attorney's fees should terminate at that point.

The court is unpersuaded by this argument. While the defendants argue that the relief specifically sought by the plaintiffs was granted when the INS forwarded a copy of Ms. Nong's A-file to the State Department in September 1997, the court believes that the relief actually sought by the plaintiffs was not granted until the plaintiffs were notified that the A-file was received at the Consulate.

The plaintiffs' prayer for relief in their complaint requests relief that is "just and proper." [12] While such a generic statement does not specifically indicate that the relief sought includes the plaintiffs' notification that the A-file was received at the Consulate, the court concludes that until the plaintiffs were notified, they were unaware that they had obtained any relief. Therefore, it is reasonable to interpret the plaintiffs' request for relief to include notification that the A-file was received at the American Consulate in China. Furthermore, there is no documentation to support a September 1997 date of notification. The defendants submitted cor-

8. *See* Pl. Reply Ex. H (CPI for December 1996 calculated by using CPI data for January 1997 because data for December 1996 is not available).

9. *See* Pl. Reply Ex. H (CPI for October 1981 calculated by using CPI data for November 1981 because data for October 1981 unavailable).

10. CPI data is not available for 1998, so the 1998 adjusted attorney rate is the same as the 1997 rate.

11. *See* Pl. Reply Ex. H (CPI for 1997 calculated by using CPI data for November 1997, the last month for which CPI data is available).

12. *See* Complaint 7 at ¶ 5.

respondence indicating that Ms. Nong's A-file may actually have been received at the Consulate between December 27, 1997 and February 2, 1998.[13] The plaintiffs acknowledge notification by letter from the Consulate on or about April 21, 1998 advising them that Ms. Liang should visit the office.[14] The plaintiffs also acknowledge issuance of the visa on May 13, 1998.[15] Because the plaintiffs' first record of notification from the Consulate after it received the A-file occurred on April 21, 1998, it is reasonable to terminate calculation of attorney's fees on that date. Thus, the court adopts the April 21, 1998 date for the calculation of attorney's fees.[16]

In addition, the plaintiffs argue that they should be compensated for attorney's fees accumulated after April 21, 1998 but before the issuance of Ms. Liang's visa on May 13, 1998 for time spent ensuring that the Consulate issued the visa after the A-file was received. Plaintiffs will not be granted compensation for this period because the authority they rely upon is inapplicable to the facts of this case.[17]

### 3. Disputed Costs

■ The defendants challenge specific charges they believe are unnecessary and unreasonable. The defendants object to the following: (1) a charge for filing a certificate of service with the court clerk on November 15, 1996 because the charge was levied separate from the filing of the complaint; (2) charges for reading consent motions for an extension of time on January 16, 1997 and January 31, 1997; and (3) a charge accrued on May 23, 1997 for drafting a summary judgment motion that the plaintiffs did not file with the court. The court has discretion in determining whether the prevailing party should be compensated for such charges. *See Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

First, the plaintiffs assert that they were billed for thirty minutes spent filing a certificate of service because the certificate had to be filed separately from the complaint as counsel had to wait for return of the certified mail receipt before the certificate could be filed with the court clerk. Second, the plaintiffs maintain that they were billed for one hour spent working on each consent motion because these required counsel to pull the files, review the facts, and consider if a response was required. Third, the plaintiffs posit that they were billed for one hour spent drafting a cross motion for summary judgment as ordered by the court; the motion was never filed because the INS finally found Ms. Nong's A-file. Because the court finds the above-referenced charges to be reasonable, these charges will be incorporated into the court's final calculation of attorney's fees.

### 4. Adjustment to Fee Application

■ The plaintiffs also argue that an additional ten hours spent preparing the reply brief should be added to the total number of hours expended. The plaintiffs are entitled

---

**13.** In an e-mail sent from Thomas M. Ramsey to Melissa B. Arkley at the State Department on April 28, 1998, Mr. Ramsey wrote, "The A-file information was received by us on December 27, 1997." *See* Def.Opp.Ex. D2. By contrast, in an e-mail sent from Geoffrey Nyhart to Melissa B. Arkley at the State Department on April 24, 1998, Mr. Nyhart wrote, "On February 2, 1998 we received the A-file." *See* Def.Opp.Ex. D1.

**14.** *See* Pl.Mot.Ex. L at 6 (on April 21, 1998, plaintiffs' attorney had a conference call with Ms. Liang during which the attorney was informed that Ms. Liang received a letter from the Consulate requesting that she return to the Consulate).

**15.** *See* Def. Status Rep.Ex. B (fax sent from Paul Shearman Allen & Associates to Suzanne C. Nyland at U.S. Attorney's Office on May 13, 1998 indicating that Ms. Liang had received her immigrant visa).

**16.** If the court terminates calculation of attorney's fees on April 21, 1998, then time spent preparing the motion for attorney's fees is not affected. Thus, the total deduction from plaintiffs' fee application is 0.75 hours for expenditures from May 7, 1998 through June 2, 1998.

**17.** Plaintiffs cite *Sullivan v. Hudson,* 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), as authority for providing compensation for attorney's fees expended after notification. *Sullivan* is inapplicable in the present case, however, because the holding provides for compensation for attorney's fees expended during administrative proceedings on remand. The present case is not an action on remand and any expenditures made by plaintiffs' attorney during the administrative phase of the case occurred before this court had jurisdiction to hear the case.

to compensation for the reasonable expenses incurred by filing an EAJA application. *See United Church Board,* 649 F.Supp. at 499. Therefore, because time spent preparing the reply brief is not included in the original calculation of hours expended, an additional ten hours is added to the total.

### 5. Final Calculation

(Reasonable Number of Hours) (Reasonable Hourly Rate)

| | | | |
|---|---|---|---|
| Attorney: | 72.6 total billing hours [18] multiplied by the hourly rate of $129.75 | = | $9,419.85 |
| Associate: | 5.9 total billing hours multiplied by the hourly rate of $129.75 | = | $765.53 |
| Costs: | court filing fee | = | $120.00 |
| TOTAL: | | | $10,305.38 |

### III. Conclusion

For the reasons set forth above, it is this 29 day of October, 1998, hereby

**ORDERED** that the Plaintiffs' Motion for Award of Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act is **GRANTED** in the amount of $10,305.38.

**SO ORDERED.**

---

**18.** *See* Pl.Mot.Ex. L (The sum of plaintiffs' original total time is 63.35 not 60.45 for 1996–1998. A 0.75 hour deduction is taken for expenditures made after the April 21, 1998 notification date. Time spent preparing the original motion for attorney's fees and costs, however, is included in this figure. An additional ten hour expenditure for preparing the reply brief is also added to plaintiffs' attorney's total time. Thus, the total number of hours is 72.60.).