Milagros DOUGLAS and Sara
Douglas, Plaintiffs,

v.

James BAKER III, Secretary
of State, Defendant.

Civ. A. No. 89–1906.

United States District Court,
District of Columbia.

Dec. 16, 1992.

132

Antonio C. Martinez, New York City, for plaintiffs.

Patricia D. Carter, Asst. U.S. Atty., Washington, DC, for defendant U.S.

## MEMORANDUM

GASCH, District Judge.

■ This matter is before the Court on plaintiffs' motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d),[1] the government's opposition, and the numerous replies and counter-replies which have been filed pursuant thereto. On April 24, 1991, this Court granted plaintiffs' motion for a declaration that they are citizens of the United States; however, the Court denied plain-

---

1. EAJA § 2412(d)(1)(B) requires the prevailing party to file for attorney's fees within thirty (30) days of the final judgment in the action. This Court disposed of the instant case on its merits by Memorandum and Order issued on April 24, 1991. However, the term "final judgment" under the EAJA means a judgment that is final *and* not appealable. 28 U.S.C. § 2412(d)(2)(G). Thus, the EAJA allows for the filing of attorney's fees within thirty days after the expiration of the time for appeal. *Haase v. Sessions*, 893 F.2d 370, 376 (D.C.Cir.1990); *cf. Melkonyan v.*

*Sullivan*, —— U.S. ——, ——, 111 S.Ct. 2157, 2165, 115 L.Ed.2d 78 (1991). Under Fed. R.App.P. 4(a)(1), the government's time for filing its notice of appeal in this case expired on June 23, 1991, which is sixty (60) days after the Court's April 24th Order. Thus, plaintiffs had until thirty days after June 23, 1991, to file for attorney's fees. Because plaintiffs, through counsel, filed their motion for attorney's fees on July 23, 1991, their motion has been timely filed.

tiffs' request for a writ of mandamus compelling the government to issue passports to plaintiffs. There is no dispute that plaintiffs have prevailed on the central issue in this case, namely, whether they are United States citizens.[2] However, the government contends that plaintiffs' counsel is not entitled to an award of attorney's fees under the EAJA because the government's decision not to issue plaintiffs passports was "substantially justified," as was its decision to defend its action in court. The government also maintains that the fees and expenses demanded by plaintiffs, which total $36,297.50, are excessive. For the reasons set forth below, the Court finds that the government's position was not substantially justified. However, the Court agrees with the government that the attorney's fees that have been demanded by plaintiffs are excessive.

## DISCUSSION

I. Whether Attorney's Fees Are Appropriate Under the EAJA.

The EAJA provides that a court "shall" award attorney's fees to a prevailing party, other than the United States,

> in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Defendant concedes that plaintiffs have prevailed in the underlying lawsuit. What the Court must determine is whether the government's position was "substantially justified."

■■■ The government bears the burden of proving that its position was "substantially justified." The government will car-

ry its burden if it can establish that it was "justified to a degree that it could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). Put another way, the government must prove that its position had a reasonable basis both in law and in fact. *Id.* The analysis is bifurcated: the Court must determine not only whether the government was substantially justified in its litigation position, but also whether it was substantially justified in the action or omission that gave rise to the litigation. 28 U.S.C. § 2412(d)(2)(D). As this Court has explained, "there needs to be a good reason for the [government's] action and a good reason for fighting about it." *National Law Center on Homelessness and Poverty v. United States Dept. of Veterans Affairs,* 799 F.Supp. 148, 156 (D.D.C. 1992).

■■■ In the case under consideration, the Court finds that neither the government's litigation position nor its initial decision not to give plaintiffs passports was "substantially justified." The government argues that its denial of plaintiffs' passport applications was reasonable because plaintiffs' only proof of their father's presence in the United States[3] was the submission of two affidavits which asserted plaintiffs' father's presence in the United States Virgin Islands between the years 1915 and 1935. Opposition To Motion For Attorneys' [sic] Fees at 2 (hereinafter "Opposition"). In the government's view, it was reasonable for the American Embassy in the Dominican Republic to question the credibility of these affidavits given the Embassy's experience with these matters. Opposition at 2–3. The implication is that because the Embassy receives a constant deluge of passport applications, it cannot accept all of the documents in support of the applications at face value.

---

**2.** Of course, plaintiffs need not succeed on every claim to be considered a "prevailing party" within the meaning of the EAJA. *Hensley v. Eckerhart,* 461 U.S. 424, 428, 103 S.Ct. 1933, 1936, 76 L.Ed.2d 40 (1983).

**3.** Plaintiffs are natives and lifetime residents of the Dominican Republic. Plaintiffs' father was

a United States citizen. In order to transmit his citizenship to his children, plaintiffs' father must have been present in the United States for not less than ten years, at least five of which were after the age of fourteen. 8 U.S.C. § 1401(g).

The Court understands the Embassy's predicament: the Embassy must strike a balance between not opening the floodgates to the United States and granting meritorious passport applications. However, the Court continues to believe that it was unreasonable for the Embassy to discredit the affidavits submitted by plaintiffs without inquiring into their veracity. As counsel for plaintiffs points out, the foreign service officer should have questioned the affiants before rejecting their accounts. Moreover, the Court remains convinced that it was unreasonable for the Embassy to credit a fifteen-year-old, unsubstantiated statement which suggested that plaintiffs' father had entered the merchant marine at an early age. *See* Memorandum and Order of April 24, 1991, at 7–8. In light of the fact that there was no other evidence contradicting plaintiffs' father's continuing presence in the United States, the Court finds that the government's denial of plaintiffs' passport applications was not "substantially justified."

Even more unreasonable than the Embassy's decision to deny plaintiffs' passport applications was the government's decision to drag this matter into protracted litigation. In a case such as this where there is substantial evidence of plaintiffs' United States citizenship and scant, if any, evidence against their citizenship, it is patently unreasonable for the government to elect to put up a fight. The Court is aware that there are many cases where the government will lose at trial but its position will, nonetheless, be substantially justified. *See Pierce v. Underwood*, 487 U.S. at 569, 108 S.Ct. at 2552. The instant case is not such a case. In summary, the Court finds that the government's position was justified neither in law nor in fact, and, therefore, plaintiffs' counsel is entitled to be paid for his representation.

## II. Amount of the Award.

### A. *The Rate of Pay.*

■ The EAJA imposes a presumptive cap on the rate at which an attorney may be compensated. The statute provides:

The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that ... (ii) attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). Taking into account the increases in the Consumer Price Index between October 1981, when the EAJA was enacted, and June, 1991,[4] counsel for plaintiffs argues that he is entitled to a cost-of-living adjustment in the statutory rate from $75 to $109 per hour. The government concedes that plaintiffs' counsel, if awarded attorney's fees, deserves a cost-of-living adjustment. The government argues, however, that opposing counsel should be paid based on the historical rates in effect at the time the work was performed rather than the rates in effect at the time he filed for attorney's fees.

In *Wilkett v. Interstate Commerce Commission*, 844 F.2d 867, 875 (D.C.Cir. 1988), the Court of Appeals held that when making cost-of-living adjustments to the EAJA statutory rate, the district court should make adjustments up until the time when legal services were rendered rather than the time when the prevailing party filed for fees or was awarded fees. In light of *Wilkett*, the Court will adjust the statutory rate based on increases in the Consumer Price Index from October 1981, when the EAJA was enacted, to February 1991, when counsel for plaintiffs completed his services in the underlying action.

According to the Bureau of Labor Statistics, the Consumer Price Index ("CPI") for the United States was 93.4 in October 1981. By February 1991, the CPI had risen to 134.8. Thus, the ratio of price increase for this time period is 1.44 (134.8 divided by 93.4). The maximum statutory rate, $75.00, multiplied by the ratio of price in-

---

4. It is unclear why counsel proposes June, 1991, as the end point rather than February, 1991, the date when he completed his services, or July, 1991, when he filed for attorney's fees.

crease, 1.44, produces an adjusted rate of 108.24. The Court will, therefore, adjust plaintiffs' attorney's rate of pay to $108.00 per hour for the services rendered in connection with the litigation in this case.[5]

Plaintiffs' attorney contends that his rate of pay should be further increased to $150 per hour because of the limited availability of qualified immigration attorneys who could and would have handled this case.[6] The limited availability of qualified attorneys willing to take a case at the statutory rate is a "special factor" warranting a rate increase under EAJA § 2412(d)(2)(A). Mr. Martinez also asks the Court to increase the adjusted statutory rate because of his specialized knowledge of immigration law, which is also a "special factor." [7]

In *Pierce v. Underwood*, 487 U.S. at 572, 108 S.Ct. at 2553, Justice Scalia, writing for a majority of the Court in Part V of the opinion, explained,

> the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to attorneys "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the $75 cap, reimbursement above that limit is allowed.

In light of *Pierce v. Underwood*, the Court is satisfied that Mr. Martinez' specialized knowledge of immigration law, and the limited availability of attorneys who would have taken this case at the statutory rate, are "special factors" which justify an increase in the rate of pay. Accordingly, the Court will further increase his rate of pay from $108 per hour to $150 per hour. *See Nadler v. Immigration and Naturalization Service*, 737 F.Supp. 658, 661–62 (D.D.C.1989) (counsel's specialized knowledge of immigration law justified increase in the statutory rate of pay to $150 per hour); *cf. Abel Converting, Inc. v. United States*, 695 F.Supp. 574, 580 (D.D.C.1988) (no "special factor" justified an award of attorney's fees in excess of the adjusted statutory ceiling).

**B.** *Pre–Litigation Fees and Expenses.*

 The government submits that Mr. Martinez is not entitled to be paid for pre-litigation work done at the administrative level which preceded this case. Supplemental Memorandum In Support Of Defendant's Opposition To Plaintiffs' Motion For Attorneys' [sic] Fees at 3–5. This work includes, *inter alia*, Mr. Martinez' efforts to obtain passports for plaintiffs from the U.S. Consul in Santo Domingo.

The EAJA requires the Court to award attorney's fees to a prevailing party, in "any civil action ... including proceedings for judicial review of agency action." 28 U.S.C. § 2412(d)(1)(A). There can be no legitimate dispute that the presentation of plaintiffs' passport applications in Santo Domingo was not part of the subsequent civil action in this Court. *See Full Gospel Portland Church v. Thornburgh*, 927 F.2d

---

**5.** The government urges the Court to apply a different rate of pay for each year in which plaintiffs' counsel provided legal services in this case. As this Court noted in *National Law Center on Homelessness and Poverty*, 799 F.Supp. at 157 n. 10, such a method of calculation would entangle the Court with needless and burdensome line-drawing problems. Moreover, the amount of money which would be saved by this method is negligible.

**6.** When this case was transferred from the Southern District of New York to this Court, Mr. Martinez, who practices law in New York, at-

tempted to find local counsel to represent plaintiffs. His inability to do so persuades the Court that there is a paucity of local immigration attorneys willing to take cases at the statutory rate.

**7.** Counsel's experience in immigration law is extensive: he speaks fluent Spanish, he has practiced immigration law for 35 years, he is a former Director of the American Immigration Lawyers Association, and he maintains a satellite office in Santo Domingo, Dominican Republic.

628, 631 (D.C.Cir.) (pre-litigation visa proceedings were not part of the subsequent civil action), *cert. denied,* —— U.S. ——, 112 S.Ct. 867, 116 L.Ed.2d 773 (1991). Nevertheless, Mr. Martinez is entitled to be paid for his pre-litigation work on plaintiffs' passport applications if he can show that this Court's determination of plaintiffs' citizenship constituted "judicial review of an *adversary adjudication,* as defined in subsection (b)(1)(C) of section 504 of title 5, United States Code [the Administrative Procedure Act]." 28 U.S.C. § 2412(d)(3) (emphasis added). Mr. Martinez maintains that the processing of passport applications constitutes an "adversary adjudication" within the meaning of the Administrative Procedure Act ("APA"). The government disagrees.

"Adversary adjudication" means an adjudication under section 554 of the APA. 5 U.S.C. § 504(b)(1)(C). Section 554 governs adjudications which are "required by statute to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554. Such adjudications must feature the following procedural components: an impartial and unbiased presiding officer; notice and opportunity to participate in a hearing; the right of the parties to appear with counsel; the right to present oral and written evidence and to cross-examine adverse witnesses; the right to submit proposed findings, conclusions and exceptions; the compilation of an exclusive record upon which the agency must base its decision; and limitations on *ex parte* communications and on the combination of prosecutorial and adjudicative functions. 5 U.S.C. §§ 553–557; *St. Louis Fuel and Supply Co., Inc. v. Federal Energy Regulatory Commission,* 890 F.2d 446, 448 (D.C.Cir. 1989). Mr. Martinez contends that the processing of passport applications contains all of these procedural components. In support of the contention, he relies on 22 C.F.R. § 51.80 *et seq.* (1992), which sets forth the State Department's procedures for review of the denial of certain passport applications.

Under 22 C.F.R. § 51.80 *et seq.,* a specific class of unsuccessful passport applicants are afforded a hearing with procedural safeguards which are similar to the procedural guarantees present in APA "adversary adjudications." However, plaintiffs have been expressly excluded from the class which is protected by this regulation. The regulation provides:

> The provisions of §§ 51.81 through 51.89 apply to any action of the Secretary taken on an individual basis in denying, restricting, revoking or invalidating a passport or in any other way adversely affecting the ability of a person to receive or use a passport except action taken by reason of *noncitizenship* . . . .

22 C.F.R. § 51.80 (emphasis added). Because plaintiffs were denied passports on the ground that they were noncitizens, they were not entitled to a procedural due process-type hearing as described in sections 51.81 through 51.89. More to the point, no such hearing was held: Plaintiffs applied for passports at the U.S. Consul in Santo Domingo. When their applications were denied, they did not seek a review hearing but, rather, sued for relief in the Southern District of New York and, ultimately, in this Court. In short, the processing of plaintiffs' passport applications was not an "adversary adjudication" within the meaning of the APA. Therefore, plaintiffs are not entitled to reimbursement for costs incurred and attorney's fees for work performed prior to filing suit in the Southern District of New York.

### C. *Post–Litigation Fees and Expenses.*

■ The government also contends that Mr. Martinez is not entitled to be paid for work performed after this Court's April 24, 1991, Memorandum and Order. Second Supplemental Memorandum In Support Of Defendant's Opposition To Plaintiffs' Application For Attorneys' [sic] Fees at 3–4. This work includes counsel's efforts to enforce this Court's declaration of plaintiffs' United States citizenship by obtaining U.S. passports for plaintiffs.

In *Full Gospel Portland Church v. Thornburgh,* 927 F.2d at 631–33, this circuit rejected the plaintiff's request for attorney's fees for legal representation rendered at a deportation hearing which had

been held after plaintiff brought suit in the district court. Once the district court favorably determined the plaintiff's visa preference status, plaintiff became the prevailing party and the civil action (or, judicial review of the agency action) ended. *Id.* at 631–32. Thus, the plaintiff was not entitled to attorney's fees for the services rendered at the deportation hearing.

The holding in *Full Gospel* controls the post-litigation fees issue in the instant case. Here, as in *Full Gospel*, plaintiffs attained prevailing party status in the district court. All that was left for the Secretary of State to do was to implement this Court's Order. Thus, the subsequent administrative processing undertaken by Mr. Martinez was not part of the underlying civil action. Therefore, Mr. Martinez is not entitled to be paid for attorney's fees and costs generated during this time period.

Plaintiffs complain, however, that the civil action in this Court survived this Court's April, 1991, Order because the Court expressly "remanded [the case] to the Secretary of State for further action consistent with [the Court's] Order." Plaintiffs cite *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), for the proposition that the EAJA provides attorney's fees for representation at the administrative level following a court-ordered remand. Answer To Second Supplemental Memorandum In Support Of Defendant's Opposition To Plaintiff's [sic] Application For Attorney's Fees at 15–16.

In *Sullivan v. Hudson*, 490 U.S. at 886, 109 S.Ct. at 2254, however, the district court remanded the case to the Social Security Administration for a rehearing. *Id.* at 880, 109 S.Ct. at 2251. Thus, the claimant could not attain prevailing party status (a determination of entitlement to disability benefits) until after the outcome of the administrative proceedings. *Id.* at 886, 889, 108 S.Ct. at 2254, 2256. The Supreme Court viewed the administrative proceedings as being "so intimately tied to the resolution of the judicial action ... [that] they should be considered part and parcel of the action for which fees may be awarded." *Id.* at 888, 108 S.Ct. at 2255. More-over, the district court continued to retain jurisdiction over the action within the meaning of the EAJA. *Id.* at 887–88, 108 S.Ct. at 2255.

Unlike the claimant in *Sullivan*, the plaintiffs in this case prevailed in the district court. Hence, once this Court decided the case in favor of plaintiffs and remanded it to the Secretary of State, there was nothing left for this Court to do. Put another way, since plaintiffs had already prevailed in this Court, there was no need for the Court to retain continuing jurisdiction over the Secretary of State. The Court's use of the word "remand" in its Order does not in any way indicate the existence of an "intimate tie" between this Court and the administrative agency. As in *Full Gospel*, 927 F.2d at 632, the administrative agency in this case had only to implement the Court's legal conclusion. Therefore, Mr. Martinez will not be compensated under the EAJA for his efforts to expedite the Secretary of State's execution of this Court's Order.

■ The Court's conclusion that Mr. Martinez will not be paid post-litigation attorney's fees for his efforts to obtain plaintiffs' passports does not mean that he will not receive compensation for his post-litigation efforts to obtain attorney's fees. *See Commissioner, Immigration and Naturalization Service v. Jean*, 496 U.S. 154, 162, 110 S.Ct. 2316, 2320, 110 L.Ed.2d 134 (1990). However, the Court finds that Mr. Martinez' "fees for fees" are exorbitant. All in all, Mr. Martinez has filed, in addition to his initial application for attorney's fees, six amended applications for attorney's fees, and seven memoranda in support of his applications for fees, generating 140.5 hours of legal work. This figure is more than double the amount of time for which Mr. Martinez is entitled to compensation for services rendered in the underlying civil action (*see, infra*). Although the government is also to blame for this excess, Mr. Martinez has clearly disregarded the Supreme Court's admonition that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Therefore, the

Court will compensate Mr. Martinez for the time he spent preparing his original Application for Attorney's Fees and its supporting memorandum, but not for the fees generated by his six amended applications for fees and subsequent memoranda. Furthermore, since the preparation of Mr. Martinez' Application for Attorney's Fees did not require specialized or distinctive knowledge of immigration law, he will not be paid at the enhanced rate of $150.00 per hour for this work. Rather, he will be compensated at the adjusted statutory rate of $108.00 per hour.

#### D. *Total Amount of the Award.*

Consistent with the foregoing findings and conclusions, Mr. Martinez will not be compensated for the following: 16.25 hours of pre-litigation work (Application For Attorney's Fees at 8); $128.00 of pre-litigation expenses;[8] twelve hours of post-litigation legal work (Application For Attorney's Fees at 12; Second & Third Amended Applications For Additional Attorney's Fees); $125.55 of post-litigation expenses;[9] and 117.5 hours for the time which he spent preparing his six amended applications for attorney's fees and their supporting memoranda.

Mr. Martinez will be awarded the following: 66.25 hours of litigation fees at the rate of $150.00 per hour, or $9,937.50; 23 hours of fees which he billed for the drafting and filing of his original Application for Fees and its supporting memorandum, at the rate of $108.00 per hour, or $2,484.00; and $814.00 in litigation expenses. Accordingly, Mr. Martinez' total award is $13,235.50.

SO ORDERED.

---

8. In his Application for Attorney's Fees at 13–14, Mr. Martinez asks the Court to reimburse him for the following pre-litigation expenses: a $10.00 telephone call with an attorney in St. Croix, a $100.00 fee paid to an attorney in St. Croix for obtaining an affidavit that was submitted in support of plaintiffs' passport applications, and an $8.00 notary public fee at the Consulate in Santo Domingo.

9. This sum reflects the following: a $20.00 bill for the July 2, 1991, typing of this Court's Memorandum & Order into Spanish (Application For Attorney's Fees at 14); $101.55 in express mail costs (First & Fourth Amended Applications For Additional Attorney's Fees); a $4.00 Notary Public fee (Second Amended Application For Additional Attorney's Fees).