SHU CHEN, Plaintiff,

v.

William S. SLATTERY,
et al., Defendants.

Civ. A. No. 93–0384 (RCL).

United States District Court,
District of Columbia.

Jan. 28, 1994.

Donald Louis Schlemmer, Washington, DC, for plaintiff.

Mark A. Holmstrup, Maryellen O'Neill, U.S. Attorney's Office, Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

■ This case comes before this court on plaintiff's motion for an award of attorney's fees and costs under 28 U.S.C. § 2412 (the Equal Access to Justice Act ("EAJA")).[1] Having considered the memoranda and evidence of both parties, this court shall grant plaintiff's motion. A separate order shall issue this date.

### I. FACTS

Plaintiff first applied for an employment authorization document ("EAD") on May 28, 1990 (Defs.' Opp'n, Ex. A; Pl.'s Reply, Ex. 22). The INS terminated his EAD application for failure to prosecute on January 29, 1991 (Defs.' Opp'n, Ex. C).

Plaintiff again applied for an EAD on August 19, 1992 (Defs.' Opp'n, Ex. D). In a letter dated November 3, 1992, plaintiff submitted several documents to the INS, including copies of his driver's license, resident alien card, passport, and birth certificate with translation (Pl.'s Reply, Ex. 3, at ¶¶ 14, 26, 27). The letter notified the INS that if plaintiff received no response within fifteen days, he would file an action in federal court (Pl.'s Reply, Ex. 3).

The INS informed him by letter on January 25, 1993, that "in order to process your application, you must provide this office with official supporting documentation in your *name* only (*i.e.*, utility bills, certified copies of your income tax records, birth, marriage and death certificates, public assistance records, driver's license, hospital records and any other official documents issued by a recognized institution)." (Defs.' Opp'n, Ex. E., emphasis in original.) The letter told plaintiff that failure to respond within thirty days would cause his application to be denied as abandoned (Defs.' Opp'n, Ex. E).

On February 23, 1993, plaintiff filed this lawsuit against the INS, charging it with failing to adjudicate his eligibility for an EAD. Three weeks later, on March 16, 1993, defendants authorized plaintiff's EAD (Defs.'

Opp'n, Ex. F). The INS states that on that day, plaintiff finally submitted necessary additional documentation so that the INS could act on his application.

Once plaintiff received his EAD, this court dismissed plaintiff's action as moot, except with respect to the issue of fees and costs (Order of May 11, 1993). Plaintiff filed the motion at issue here on June 15, 1993, requesting $1,219.40 in attorney's fees and expenses.

### II. ANALYSIS

#### A. Prevailing Party

■ In order to claim fees under EAJA, plaintiff must be a "prevailing party." 28 U.S.C. § 2412(d)(1)(A). A plaintiff may be a "prevailing party" for EAJA purposes even if (as here) the lawsuit is rendered moot by the granting of relief, as long as plaintiff demonstrates that "it is more probable than not that the government would not have performed the desired act absent the lawsuit." *Public Citizen Health Research Group v. Young*, 909 F.2d 546, 550 (D.C.Cir.1990). This is a "but for" causation test. *See id.*

■ The issue in the present case is whether the INS issued plaintiff his EAD on March 16, 1993 because of the documents he supposedly submitted that date, or because of the lawsuit he filed against the INS three weeks before. Plaintiff claims that the action he filed against the INS on February 22, 1993, spurred the INS's decision to grant him his EAD.

Defendants counter that plaintiff's lawsuit had nothing to do with their decision to grant his EAD. According to defendants, "plaintiff received his EAD not because of the lawsuit he brought but because he finally provided the documentation required for the INS to issue an EAD on March 16, 1993." (Defs.' Opp'n, at 3.) Defendants state that "[i]t was not until March 16, 1993, several weeks after his complaint was filed, that plaintiff provided the additional documentation and his EAD was issued." (Defs.' Opp'n, at 4.)

---

1. Plaintiff also claims that the doctrine of *quantum meruit* entitles him to attorney's fees. Because the court finds no contract implied between the parties, plaintiff's *quantum meruit* theory fails.

Yet defendants' claim is hard to accept at face value. First of all, the claim that defendants have made to this court in their brief and in oral argument is not supported by defendants' documents. Defendants' submissions do not indicate what "additional documentation" plaintiff supposedly submitted on March 16, 1993. Defendants have not submitted any letters or documents sent to them by plaintiff on March 16, 1993. Defendants' declaration of EAD officer Sham Q. Chin-Gee states simply that plaintiff "appeared on March 16, 1993, to inquire as to his pending I-765 application for deferred enforced departure. On March 16, 1993, [plaintiff] was issued an employment authorization document" (Chin-Gee Aff., at ¶ 3, 4). The declaration does not indicate that plaintiff produced any new documents on March 16, 1993. Significantly, nothing in the declaration indicates that the INS officer knew nothing about plaintiff's lawsuit. The undated INS form, stamped "APPROVED" and "ISSUED: 03/16/93" (Defs.' Opp'n, Ex. F), that defendants have submitted is similarly unconvincing. The form does not indicate that the INS acted on any new information submitted March 16, 1993, or what that new information might have been.

Secondly, defendants have not stated what "additional documentation" they had been waiting for. On January 25, 1993, defendants had asked plaintiff to submit "supporting documentation" such as "utility bills, certified copies of your income tax records, birth, marriage and death certificates, public assistance records, driver's license, hospital records and any other official documents issued by a recognized institution." (Defs.' Opp'n, at Ex. E.) Yet plaintiff had sent the INS several of these requested documents over two months before. In a letter to the INS dated November 3, 1992, plaintiff states that he was enclosing copies of his driver's license, resident alien card, passport, and birth certificate with translation (Pl.'s Reply, Ex. 3, at ¶¶ 14, 26, 27. *See also* Pl.'s Reply, Ex. 14 (driver's license and resident alien card); Ex. 17, at 3 (translation of birth certificate); Ex. 18 (passport)). Defendants do not dispute that he sent them copies of these documents.

Because nothing in the record indicates that the INS acted on fresh evidence in granting the EAD, this court concludes that plaintiff's lawsuit was the "but for" cause of his EAD grant, and that plaintiff is thus a "prevailing party" for EAJA purposes.

### B. Substantial Justification

█ Since plaintiff has successfully shown that he was a prevailing party, defendants can avoid liability only if they show that their conduct that led to the lawsuit and their position in this lawsuit were "substantially justified." 28 U.S.C. § 2412(d)(1)(A). *See also Federal Election Comm'n v. Rose*, 806 F.2d 1081, 1986–87, 1090 (D.C.Cir.1986); *Spencer v. N.L.R.B.*, 712 F.2d 539, 557 (D.C.Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984). Defendants are not liable for fees under EAJA if "the Government acted slightly more than reasonably, even though not in compliance with substantive legal standards." *Rose*, 806 F.2d at 1087.

In the present case, the government acted less than reasonably. The record shows that for over three months, the INS had at its disposal all the documentation it needed—including copies of plaintiff's driver's license, resident alien card, passport, and birth certificate with translation—and yet it did nothing until plaintiff sued the agency for its inaction. Nor is the government's legal position in this case substantially justified: the government has made no attempt to justify its delay in acting on plaintiff's EAD application. In short, the government's conduct and legal position in this case are not at all substantially justified, and they cannot bar an award of attorney's fees and costs under EAJA.

### C. Reasonableness of Request for Fees and Costs

#### 1. Hours and Hourly Rate

Plaintiff timely filed an affidavit supporting his request for compensation for the work his counsel performed in this case. The number of hours expended—9.20—is reasonable and

well-documented by affidavit (Schlemmer Aff., at ¶ 3).

█ Plaintiff has requested his established billing rate—$110 per hour—for his work in this case. EAJA would have awarded him more, if he had requested it. Congress capped awarded rates at $75 per hour when EAJA became effective in 1981, but permitted this cap to rise with the cost of living. *See Wilkett v. I.C.C.*, 844 F.2d 867, 874 (D.C.Cir.1988) (Congress intended EAJA's statutory cap to be adjusted for increases in the cost of living). Given the increase in the cost of living since 1981, the current statutory limit on fees is $119.37 per hour.[2] Nevertheless, because plaintiff has requested only $110 per hour, this court will award him only that amount, especially since plaintiff has not demonstrated that any special factors—such as exceptional quality of representation, or a high risk of realizing no financial return on legal effort—justify a higher rate. *See Union of Concerned Scientists v. U.S. Nuclear Regulatory Comm'n*, 840 F.2d 957, 959 (D.C.Cir.1988) (granting cost of living increase but finding that no special factors justified additional increase).

### 2. *Out-of-Pocket Expenses*

█ Plaintiff may recover some, but not all, of his out-of-pocket costs. Plaintiff's reasonable copying costs ($37.80) are recoverable as a traditional element of "reasonable attorney's fees." 28 U.S.C. § 2412(d)(2)(A). *See West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (traditional elements of an attorney's fee may be recovered under statutes shifting "a reasonable attorney's fee");

2. The U.S. Attorney's Office has calculated the statutory rates for EAJA, adjusting for the increased cost of living as calculated by the Consumer Price Index for the Washington, D.C./Maryland/Virginia area, for each year since 1981. The rate quoted in this opinion is taken from that chart. The chart's method of calculating EAJA rates for each year is taken from *Ramon–Sepulveda v. I.N.S.*, 863 F.2d 1458, 1463 n. 4 (9th Cir. 1988), and is followed in *Douglas v. Baker*, 809 F.Supp. 131, 134–35 (D.D.C.1992).

The U.S. Attorney's Office's chart is set forth in the appendix to this opinion.

*Northcross v. Bd. of Ed. of Memphis City Schools*, 611 F.2d 624 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980) (photocopying is a traditional element of an attorney's fee). Plaintiff's filing fee ($120.00) is recoverable under 28 U.S.C. § 1920.[3] However, plaintiff's cost of service ($49.60) is neither an element of an attorney's fee nor a cost expressly taxed by statute,[4] and because this court lacks power to shift out-of-pocket expenses that fall into neither category, *see West Virginia*, 499 U.S. at 86, 111 S.Ct. at 1141, plaintiff may not recover the cost of service.

### III. *CONCLUSION*

For litigating this case, plaintiff is awarded attorney's fees in accordance with the chart below:

| Hours | Hourly Rate | Total Fees |
|-------|-------------|------------|
| 9.20 | $110 | $1,012.00 |

Plaintiff is also awarded recovery for the following out-of-pocket expenses:

| Item | Expenses |
|------|----------|
| Filing Fee in U.S. District Court | $120.00 |
| Photocopying | $ 37.80 |
| Total Expenses | $157.80 |

In sum, plaintiff is awarded attorney's fees and costs as follows:

| | |
|------|----------|
| Attorney's Fees | $1,012.00 |
| Costs | $ 157.80 |
| Total Attorney's Fees and Costs | $1,169.80 |

Plaintiff is hereby awarded $1,169.80 in attorney's fees and costs.

3. Section 2412(d)(1)(A) awards plaintiff "costs, as enumerated in section 1920 of this title." 28 U.S.C. §§ 2412(a)(1), 2412(d)(1)(A).

4. *See Zdunek v. Washington Metropolitan Area Transit Authority*, 100 F.R.D. 689, 692 (D.D.C. 1983) (cost of hiring special process servers not a taxable cost). *See also* 10 Wright & Miller, *Federal Practice and Procedure* § 2677, at 371–72 (1983).

## APPENDIX
United States Attorney's Office's
Equal Access to Justice Act Fees
Washington Metropolitan Area

| YEAR | CPI [1] | RATE [2] |
|---|---|---|
| November 1981 | 93.3 | 75.00 |
| 1982 | 95.5 | 76.77 |
| 1983 | 99.8 | 80.23 |
| 1984 | 104.6 | 84.08 |
| 1985 | 109.0 | 87.62 |
| 1986 | 112.2 | 90.19 |
| 1987 | 116.2 | 93.41 |
| 1988 | 121.0 | 97:27 |
| 1989 | 128.0 | 102.89 |
| 1990 | 135.6 | 109.00 |
| 1991 | 141.2 | 113.50 |
| 1992 | 146.9 | 118.09 |
| 1993 | 148.5 | 119.37 |

1. Average annual CPI–U for the Washington, DC–MD–VA area, published by the Bureau of Labor Statistics, U.S. Department of Labor. The figure for 1981 is the CPI for November 1981. The Act became effective in October 1981, but because the Bureau does not publish a Washington CPI figure for that month, the figure for the following month is used.

2. The rate is calculated using the following formula, adopted in *Ramon–Sepulveda v. I.N.S.*, 863 F.2d 1458, 1463 n. 4 (9th Cir.1988):

$$\frac{\text{rate}}{\$75.00} = \frac{\text{CPI--U}_b}{\text{CPI--U}_a}$$

$\text{CPI--U}_b$ is the average CPI for the year in which the hours were expended. $\text{CPI--U}_a$ is the CPI at the time the EAJA was enacted, *i.e.*, the 93.3 calculated by the Bureau of Labor Statistics for November 1981.

## ORDER

This case comes before this court on plaintiff's motion for an award of attorney's fees and costs under 28 U.S.C. § 2412, the Equal Access to Justice Act. Having considered the memoranda and evidence of both parties, this court hereby

ORDERS that plaintiff's motion for an award of attorney's fees and costs is granted, and

ORDERS that defendants shall pay plaintiffs attorney's fees and costs in the amount of $1,169.80.

SO ORDERED.