**NATIONAL ASSOCIATION OF MANUFACTURERS, Plaintiff,**

**v.**

**UNITED STATES DEPARTMENT OF LABOR, Defendant.**

**Civil Action No. 95–0715 (RCL).**

United States District Court, District of Columbia.

April 24, 1997.

Hamilton Loeb, Behnam Dayanim, Paul, Hastings, Janofsky & Walker, Washington, D.C., for plaintiff.

Sandra M. Schraibman, Kathryn D. Ray, United States Department of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court pursuant to plaintiff National Association of Manufacturers' ("NAM") application for reasonable attorney's fees, expenses and costs incurred in their prosecution of this action. The Association files for this award pursuant to 28 U.S.C. § 2412(a) and (d), the Equal Access to Justice Act ("EAJA"). For the reasons contained herein, this court grants the plaintiff's application for an award under the EAJA. The defendant United States Department of

Labor ("DOL") will be ordered to compensate NAM in the amount of $41,145.59.

## DISCUSSION

### I.  PRIOR CASE HISTORY

The NAM's initial complaint was filed with this court on April 14, 1995.  The complaint challenged fifteen separate components of the DOL's rules governing the H–1B visa program, a program that allows United States companies to employ aliens with "specialty occupation" skills that could benefit the employer.  In time, both sides moved for summary judgment.

On July 22, 1996, this court partially granted and denied both motions for summary judgment.  The NAM successfully established that six significant components of the H–1B program promulgated by the DOL did not comply with the notice and comment requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b)(3) (1994).  Accordingly, this court granted partial summary judgment to the NAM, electing to set aside the six violative components.  In addition, this court rejected the NAM's challenge to six of the H–1B components, and found that the challenge to three of the components was not yet ripe for review.  This court therefore granted partial summary judgment to the DOL on these nine issues.

### A.  The NAM's Application

The NAM now submits an application pursuant to the EAJA seeking an award for the reasonable attorney's fees, expenses, and costs incurred in the prosecution of this action.  The EAJA states as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party ... fees and other expenses, in addition to any costs ... unless the court finds that the position of the United States

was substantially justified or that special circumstances make an award unjust.

28 U.S.C. §  2412(d)(1)(A) (1994).

■  By not challenging the NAM in their opposition brief, the DOL effectively concedes that the NAM is in fact a prevailing party for the purposes of the statute.[1]  In addition, the DOL did not assert the existence of any special circumstances that would make a fee award unjust or inequitable.  The DOL does, however, challenge the NAM's ability to satisfy other requirements of the statute.

### II.  ELIGIBILITY UNDER THE EAJA

First, the DOL claims that the NAM is not a party eligible to receive attorney's fees and expenses under the EAJA.[2]  According to the statute, any association whose net worth exceeds $7,000,000 or whose size exceeds 500 employees at the time the civil action was filed is ineligible to receive an award as a prevailing party.  28 U.S.C. § 2412(d)(2)(B)(ii) (1994).

■  The NAM itself clearly satisfies these two criteria: it has a net worth below the $7,000,000 ceiling and employs less than 500 employees.  Decl. of Linda Chandler at 1–2.  The DOL contends, however, that since the lawsuit was brought on behalf of the NAM's numerous members, the court should utilize the aggregate of the members' net worth and employee numbers in determining the NAM's eligibility under the EAJA.  The NAM members include giant international corporations whose net worth and employee payroll greatly exceed the EAJA cap.[3]  In addition, corporations such as these serve to benefit from the NAM's successful challenge to the violative H–1B components.  In light

---

1.  A party is considered "prevailing" for the purposes of the EAJA "if they succeed on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." *Environmental Defense Fund, Inc. v. EPA*, 716 F.2d 915, 919 (D.C.Cir.1983).  Clearly, the fact that six of the challenged components of the DOL's H–1B visa program were adjudged to be in violation of the APA indicates the NAM garnered some degree of benefit from the earlier proceedings.  As such, it is a prevailing party for the purposes of the EAJA.

2.  Throughout these entire proceedings, the NAM's attorneys have represented their client on a pro bono basis.  It is well-settled that this fact does not preclude the designation of an award under the EAJA. *See Jones v. Lujan*, 883 F.2d 1031, 1035 (D.C.Cir.1989).

3.  NAM members include Du Font, Motorola, Boeing, and Chrysler.  Needless to say, these corporations greatly surpass the maximum net worth and employee number requirements as established in the EAJA.

of this, the DOL posits that the aggregate, and not merely the NAM's individual figures, should be used to determine its EAJA eligibility.

In making this claim, the DOL relies primarily on two cases: *Unification Church v. INS*, 762 F.2d 1077 (D.C.Cir.1985) and *National Truck Equip. Ass'n v. National Highway Traffic Safety Admin.*, 972 F.2d 669 (6th Cir.1992). In addition, to bolster their aggregate theory, the DOL points to the EAJA's legislative history and Congress' treatment of agricultural cooperative associations under the EAJA. This court finds none of these DOL arguments persuasive.

In *Unification Church*, three plaintiffs sought attorney's fees pursuant to the EAJA for their successful prosecution of an action. *Unification Church*, 762 F.2d at 1079. These three plaintiffs, individually, all satisfied the net worth and size caps imposed by the EAJA. The Church itself was also a fourth plaintiff in the matter. According to an agreement that existed amongst the plaintiffs, the Church was to pay for all attorney's fees incurred by the four parties. *Id.* at 1082. Under this arrangement, therefore, the Church, and not the three individual plaintiffs, would be the beneficiary of any EAJA fee award.

Congress intended to limit the award of fees to "small entities that find particularly burdensome the ever-rising costs of litigation." *Id.* The court thus decided to look to only the parties that would be personally liable for the payment of the fees in deciding if the EAJA qualifications were met. *Id.* That "real party in interest" was the Church, and since the Church did not satisfy the ceiling on profits and size imposed by the EAJA, the plaintiffs were not eligible for an award of fees. *Id.* at 1083. To hold otherwise would allow the Church to thwart the underlying purpose behind the statutory caps.

The facts of the case at bar are clearly distinguishable from the situation described in *Unification Church*. In *Unification Church*, the key language focuses on the "'fee arrangement among the plaintiffs.'" *See American Ass'n of Retired Persons v. Equal Employment Opportunity Comm'n*, 873 F.2d 402, 405 (D.C.Cir.1989). Here, no such fee arrangement exists.[4] The decision to prosecute this case was made by the NAM alone, independent of the corporations involved in the association. While some of these corporations may benefit from the successful outcome of the NAM litigation, they played no part in the legal prosecution or decision-making processes of this case. The NAM, and not any of its members or affiliates, is the only party in interest. As such, the court must look to the NAM's net worth and employee size in order to determine its eligibility under the EAJA. Since the NAM clearly satisfies these statutory ceilings, it is eligible for an award of fees and costs under the EAJA.

To refute this conclusion, the DOL relies upon the *National Truck* case from the Sixth Circuit. There, a trade association brought an action challenging the safety standards of a federal agency. *National Truck*, 972 F.2d at 670. Association members served to benefit from the association's successful prosecution of the case. Since the trade association contained "a number of companies who [could] readily afford the costs to protect their own interests," the court decided to aggregate the net worth and employees of the members in determining their eligibility for awards under the EAJA. *Id.* at 673–74. When aggregated, the numbers far surpassed the limits imposed by the statute. The plaintiff was therefore ineligible for an EAJA award.

This court is not swayed by the *National Truck* holding. Instead, this court finds persuasive the contrary results reached in *Texas Food Indus. Ass'n v. USDA*, 81 F.3d 578, 582 (5th Cir.1996) and *Love v. Reilly*, 924 F.2d

---

**4.** *Unification Church* deals only with "arrangement[s] among clients as to who will pay the fees." *Unification Church*, 762 F.2d at 1083. The situation in the case at bar involves a pro bono arrangement in which the attorney (Paul Hastings) agreed to represent its client (the

NAM) at no cost to them. Only if fees are awarded pursuant to the EAJA will Paul Hastings be monetarily compensated for its legal work on the case. As mentioned, such an arrangement does not preclude the allotment of fees under the statute. *See* note 2, *infra.*

1492, 1494 (9th Cir.1991). Both cases involved trade associations seeking awards under the EAJA. In both, the courts chose not to aggregate the net worth and employee numbers to include the corporate members of the associations. If the associations themselves qualified under the statutory ceiling, that was sufficient to bring an action for fees under the EAJA. *Texas Food,* 81 F.3d at 582; *Love,* 924 F.2d at 1494.

This court agrees with the analyses of these two circuits. The statute is clear in its description of who qualifies as a "party" capable of bringing an EAJA fee claim: "any.. *association ... the net worth of which did not* exceed 7,000,000 at the time the civil action was filed, *and which had not more than 500 employees* at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B) (1994) (emphasis added). The language is unambiguous. The statute imposes a fixed ceiling upon the net worth and employee size of associations. Nowhere does Congress instruct the courts to aggregate the net worth and employment totals of associations who function on behalf of larger corporations.[5] Congress certainly had the opportunity to include such a requirement, but chose not to.

When interpreting clear and unambiguous statutes, courts are strongly encouraged to "presume that a legislature says in a statute what it means and means in a statute what it says." *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). This is a "cardinal canon of statutory construction." *Texas Food,* 81 F.3d at 582. Section 2412(d)(2)(B) explicitly states that individual associations are required to satisfy a certain limit on net worth and size. No aggregation requirement is included. Absent ambiguity, this court gives these words their plain and obvious meaning, and therefore finds the NAM has satisfied the limits imposed on them by Congress.

The DOL argues that such an interpretation runs contrary to Congress' intent to limit EAJA award fees to small businesses who could perhaps be fearful of entering into expensive litigation. Allowing trade associations whose members include international corporations to collect under the statute, they posit, frustrates the true objective of the statute: to protect those in financial need of protection. Yet this court stresses again the plain language of the statute. Section 2412(d)(2)(B) clearly expresses Congress' desire to make associations eligible based upon their own independent qualifications. *Texas Food,* 81 F.3d at 582. Nowhere is it written that the qualifications of the association's constituent members are to aggregated. *Id.* Congress was certainly aware that national associations composed of a number of larger corporations could bring claims seeking awards pursuant to the EAJA. They chose not to provide a provision for aggregation, but instead instructed courts to look only to the association itself. This court therefore elects to give Congress' words their plain meaning, and chooses not to implicitly read in that which is not present.[6]

---

**5.** Simply because the NAM's members may benefit from the NAM's successful litigation in this case does not exclude the NAM from receiving fees under the EAJA. *Love,* 924 F.2d at 1494. Indeed, such an argument, if taken to its logical extreme, would be somewhat absurd: "... it would be a tenuous argument indeed to suggest.. an environmental organization becomes ineligible [under the EAJA] because its litigation goal of protecting a natural preserve would benefit a wealthy individual member who hikes through the affected area." Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct,* 55 LA. L. REV. 217, 319 (1995).

**6.** Obviously, national trade associations are made up of both large and small companies. The DOL argues that the presence of the larger multi-million dollar corporations among the association's members should preclude the associations from ever garnering eligibility under the EAJA. Aggregation of the association's members, they believe, should occur. Clearly, such an interpretation would leave smaller businesses in a precarious position. If they sought the protection of a national trade association, they would then be penalized by not ever being able to recover EAJA awards due to the implied aggregation requirements. These organizations, clearly the type the act is trying to protect, would be barred from recovering any fees due to their affiliation with a national trade association. The alternative is to never join any large trade association, thereby avoiding the security and benefits provided by such an arrangement. Either way, it is an unenviable position in which to place a small business, one which Congress clearly did not intend.

Section 2412(d)(2) of the EAJA goes on to exempt agricultural cooperatives and other non-profit organizations from the net worth ceiling imposed on other businesses or companies. 28 U.S.C. § 2412(d)(2)(B) (1994). The DOL argues that this provision's underlying purpose was to protect these cooperatives from the implicit EAJA aggregation requirement that Congress intended to exist. Congress would have no need to exempt these cooperatives from the aggregation of its members in determining net worth, the DOL asserts, had they not desired the EAJA to look beyond the single association to its members net worth.[7]

What the DOL fails to recognize is that "[n]either the statute nor its legislative history suggest[s] that the special eligibility rule for agricultural cooperatives and non-profits was motivated by concerns about ineligibility resulting from the aggregation of employees and assets." *Texas Food,* 81 F.3d at 581. The plain language of the EAJA does not mention aggregation. Its purpose, as explicitly mentioned, is to "make associations eligible for an award on the basis of each association's independent qualifications." *Id.* at 582. In addition, the EAJA does not exempt these same cooperatives from the 500 employee limit specified in the statute. Had Congress truly intended its net worth exemption of the agricultural cooperatives to be an implicit requirement of aggregation, they undoubtedly would have exempted them from the size ceiling as well.[8]

The DOL also cites a conference report to an EAJA amendment that describes a net worth and employee exemption for local labor unions. They posit that there would be no need to include such an exemption had the legislators not intended that the fee applicant should be analyzed in the aggregate. Yet the mere fact that such an exemption exists does not necessarily show such a Congressional intention.[9] Regardless, when stacked up against the clear and unambiguous language of the statute, this court finds the explicit wording of the statute is controlling. As such, this court looks only to the eligibility requirements of the NAM, not its members or affiliates. Since the NAM meets both the net worth and size limits, it is an eligible party under the EAJA.

### III. SUBSTANTIALLY JUSTIFIED

According to the statute, no award can be given if "the court finds that the position of the United States was substantially justified ..."[10] 28 U.S.C. § 2412(d)(1)(A). The burden to prove substantial justification is on the government. *See Hanover Potato Products, Inc. v. Shalala,* 989 F.2d 123, 128 (3d Cir.1993); *Cinciarelli v. Reagan,* 729 F.2d 801, 806 (D.C.Cir.1984). Courts have interpreted this to require that the government prove both that its underlying action and its litigation positions were substantially justified. *See Lundin v. Mecham,* 980 F.2d 1450, 1459–61 (D.C.Cir.1992). Substantial justification is present if "there is a good reason for the action, and a good reason for fighting about it." *National Law Center on Homelessness and Poverty v. United States Dep't of Veterans Affairs,* 799 F.Supp. 148, 156 (D.D.C.1992). Since this court finds that the DOL was not substantially justified in its underlying action, the question of their litigation position need not be reached.

The DOL clearly promulgated provisions pertaining to the H–1B program without allowing those affected notice or an opportunity to respond. Examples of such actions, clearly prohibited by the Administrative Procedure Act, 5 U.S.C. § 553(b)(3),

---

**7.** This *expresio unius est exclusio alterius* argument was approved by the court in *National Truck,* 972 F.2d at 674.

**8.** Indeed, one commentator believes that the Congressional purpose behind the specified exemptions was to encourage large organizations who provided socially important services (like the agricultural cooperatives) to channel their monies into those beneficial programs as opposed to expending it on necessary litigation. *See* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct,* 55 LA. L. REV. 217, 318 n. 652 (1995).

**9.** For example, the amendment may have dealt solely with a Congressional desire to reinforce certain labor law principles, as the NAM asserts.

**10.** As previously mentioned, the DOL does not contend that any special circumstances exist that would bar an award of fees.

were common. *See, e.g.,* Mem. Op. at 30–31 (chastising the DOL for its promulgation of H–1B provisions involving payment for nonproductive time and alterations in status of part-time H–1B workers without providing notice or an opportunity to respond); Mem. Op. at 40 (discussing an H–1B provision related to travel reimbursement and stating *"[o]nce again,* defendant has selected and imposed a standard without providing an opportunity for those subject to the impending standard to comment"); Mem. Op. at 31 (addressing the DOL's failure to post notice at temporary worksites). A government agency that overtly disregards the notice requirements of the APA cannot credibly argue that their underlying actions were substantially justified. *See United Church Bd. for World Ministries v. SEC,* 649 F.Supp. 492, 498 (D.D.C.1986). The DOL has done this, and therefore cannot plausibly claim substantial justification in its actions.

The DOL position is further weakened by the fact that, prior to the initiation of the lawsuit, the NAM and several other parties notified the DOL via letter that portions of the H–1B regulations did not comply with the notice and comment requirements mandated by law. The DOL chose not to respond. The DOL also was asked by assorted employers and trade associations to suspend a portion of their H–1B regulations so as to allow parties an occasion to respond. The DOL did not yield to these requests. Thus, prior to the litigation, the DOL was on notice that various groups and organizations found their regulations to be in violation of the APA. They preferred not to address these concerns, concerns that later proved to be legally correct. The DOL's failure to confront these legitimate considerations made prior to the initiation of the suit is further evidence of a lack of substantial justification for their underlying acts. *See Lundin,* 980 F.2d at 1460–61.

■ The NAM is a qualified prevailing party under the clear language of the EAJA. There exists no substantial justification for the underlying actions of the DOL.[11] As such, the NAM is entitled to an award of fees pursuant to the EAJA. This court now turns its attention to the amount of fees the NAM is authorized to receive.

## IV. THE FEE AWARD

■ All told, the NAM seeks compensation for 278.8 hours expended by attorneys in this action, and 8.4 hours of work performed by paralegals.[12] The breakdown of the attorneys' hours is as follows:

| | |
|---|---|
| Hamilton Loeb (D.C.office): | 22.65 hrs. |
| Crystal Williams (Atlanta office): | 13.5 hrs. |
| Behnam Dayanim (D.C.office): | 242.65 hrs. |
| Michael Butler (paralegal): | 7.4 hrs. |
| Todd R. Troutner (paralegal): | 1.0 hr. |

■ Section 2412(d)(2)(A) of the EAJA provides that a party may receive a maxi-

11. The DOL cites the fact that this court granted summary judgment in its favor on nine of the fifteen challenged regulations. They therefore assert that this fact—a finding for their position on a majority of the issues—equates with substantial justification. Yet the simple fact that a court decides a majority of the claims, regardless of their individual significance in the case, in favor of the government, does not mean that the underlying action was substantially justified. This would mean that the government was substantially justified in any action in which it prevails on a majority of the issues, regardless of whether the issues they are successful in litigating are important or trivial to the determination of the case. No court has ever supported this illogical argument.

12. The original hours provided by the NAM included only those spent in preparation for the actions upon which the NAM was successful. The total was equal to 254.05 attorney hours and 7.4 paralegal hours. The DOL does not dispute these figures.

In addition to these hours provided, NAM attorney Hamilton Loeb declared that the NAM spent an additional 24.75 attorney hours and an additional one paralegal hour in the preparation of their reply brief. The EAJA allows for the recovery of time and expenses incurred in filing an EAJA application. *See Nadler v. INS,* 737 F.Supp. 658, 662 n. 3 (D.D.C.1989). In light of this, this court has combined the total hours to reflect the NAM's total attorney and paralegal hours spent in pursuit of this litigation.

mum of $75 per hour for the recovery of attorney fees.[13] 28 U.S.C. section 2412(d)(2)(A) (1994). Courts may award hourly fees in excess of this limit to account for changes in the cost of living. *Massachusetts Fair Share v. Law Enforcement Assistance Admin.*, 776 F.2d 1066, 1069 (D.C.Cir. 1985); *Douglas v. Baker*, 809 F.Supp. 131, 134 (D.D.C.1992). The higher rate is calculated by first taking the ratio of price increase for the pertinent area, determined by the increase in the Computer Price Index (CPI) from the date of the enactment of the EAJA (October, 1981) to the date on which the legal services were rendered. *Shu Chen v. Slattery*, 842 F.Supp. 597, 601 (D.D.C. 1994).[14] This figure is then multiplied by the $75 per hour statutory rate. *Id.*

In the case at bar, attorneys Hamilton Loeb and Behnam Dayanim both conducted their work for this case in the greater Washington, D.C. area. Attorney Crystal Williams was based out of Atlanta, Georgia. Utilizing the proper ratio of price increase from these two regions between the dates of October 1981 (the date of the EAJA passage) and September of 1995 (approximate date in which legal services were rendered) and multiplying it by the $75 cap, the maximum adjusted cost of living fee for the D.C. area is found to be $125.56 per hour, while the Atlanta adjustment stands at $121.78 per hour.[15]

Section 2412(d)(2)(A) also allows the court to increase the hourly rate if it determines that a "special factor, such as the limited availability of qualified attorneys for the proceedings involved," necessitates the adjust-

ment. 28 U.S.C. § 2412(d)(2)(A) (1994). In *Pierce v. Underwood*, the Supreme Court interpreted this language to mean attorneys "having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." 487 U.S. 552, 572, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988). Such specialized skills included practices "such as patent law[ ] or those involving a foreign law or language." *Id.* Factors not to be considered included the difficulty of the issues, the ability of counsel, or the results obtained in the litigation. *Id.* at 573, 108 S.Ct. at 2554.

■ In the case at bar, the NAM claims that special factors necessitate the increase of Hamilton Loeb's and Crystal Williams' hourly rates. With regards to Loeb, the NAM is claiming that his expertise in issues involving the APA, coupled with the complex nature of this case and the contingent nature of the fee, requires this court grant him $295 per hour, an increase of nearly $170 over cost of living adjustment. For Williams, the NAM alleges her status as a nationally regarded immigration law expert mandates a jump up to $180 per hour, an augmentation of nearly $60 over the adjusted hourly fee.

While this court does not doubt the expertise of either Loeb or Williams, it cannot agree with the NAM's position that any special factors exist in this case. *Pierce* describes the types of specialized skills that are to be classified as special factors. Mastery of administrative or immigration issues, while

13. In actuality, § 2412(d)(2)(A) was amended on March 29, 1996 by the § 232(b)(1) of the Contract with America Advancement Act of 1996. Pub.L. No. 104–121, § 232(b)(1), 110 Stat. 847, 863 (1996). The amendment raises the maximum attorney fee per hour from $75 to $125. *Id.* Section 233 of the same act, however, provides that this higher limit imposed by "sections 331 and 332[sic] shall apply to civil actions . . . commenced on or after the date of the enactment of this subtitle." Contract with America Advancement Act of 1996, Pub.L. No. 104–121, § 233, 110 Stat. 847, 864 (1996). Since the public law was enacted on March 29, 1996, and this civil action commenced on April 14, 1995, the statutory increase to a maximum of $125 is not applicable in this case.

14. Since the month of October, 1981 does not have a Washington CPI figure, the proper CPI figure for the following month is utilized. *Shu-Chen*, 842 F.Supp. at 601 n. 1.

15. The NAM sought a rate of $70 per hour for paralegal Michael Butler's work. This rate is not contested by the DOL. In addition, the NAM seeks a rate of $80 per hour for paralegal Todd Troutner's work in the preparation of the award reply brief. This court accepts the rate of $70 per hour for paralegal Butler's work, and also deems it proper to restrict paralegal Troutner to the same $70 limit. Thus, the paralegal rate to be applied in the calculation of fees will be $70 per hour.

challenging, are not among the skills this court believes the EAJA and *Pierce* were attempting to describe. Outside of ordinary diligence, neither require distinctive knowledge or specialized skill. Unlike patent law, no technical education is necessary to excel in either.[16]

The action itself was not so complex that an attorney of ordinary knowledge with a solid work ethic could not have successfully litigated the issues. In addition, the *Pierce* Court directly rejected as "too generally applicable" the NAM contention that the contingent nature of the fee qualified as a special factor under the EAJA. *Pierce*, 487 U.S.

at 573–74, 108 S.Ct. at 2554–55. The attorneys' pro bono representation, while admirable, is nevertheless not enough to justify an increase over the already adjusted statutory limit. Accordingly, this court finds that the hourly rates should remain at the adjusted cost of living rate of $125.56 per hour for Loeb and Dayanim in Washington, D.C., and $121.78 per hour for Williams in Atlanta. In addition, a rate of $70 per hour for Butler and Troutner's paralegal services will be granted.

The total award of fees is therefore calculated as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| Loeb: | 22.65 hrs. | X | $125.56 | = | $ 2,843.93 | |
| Dayanim: | 242.65 hrs. | X | $125.56 | = | $30,467.13 | |
| Williams: | 13.5 hrs. | X | $121.78 | = | $ 1,644.03 | |
| Butler: | 7.4 hrs. | X | $ 70.00 | = | $ 518.00 | |
| Troutner: | 1.0 hr. | X | $ 70 | = | $ 70.00 | |
| | | | | TOTAL | $35,543.09 | |

## V. EXPENSES

█ The EAJA also allows for an award of reasonable expenses incurred throughout the course of the litigation. 28 U.S.C. § 2412(b) (1994). The D.C. Circuit has considered duplication expenses to be within this language. *See Massachusetts Fair Share*, 776 F.2d at 1069–70. The NAM claims $1,481 worth of photocopy expenses, a figure that is unchallenged by the DOL. Accordingly, the DOL is required to compensate the NAM in the amount of $1,481 worth of duplication expenses.

█ In addition, the NAM seeks $4,001.50 worth of expenses incurred for on-line research on Westlaw and Lexis. Items routinely billed to a client are recoverable under the EAJA. *See Shu–Chen*, 842 F.Supp.

at 600 (stating "traditional attorney's fees" are considered in determining the proper expenses). On-line research expenses are routinely billed to clients by most major law firms. As such, this court considers the $4,001.50 worth of on-line research expenses to be recoverable under the EAJA.[17]

█ In addition to these expenses, the EAJA also allows the NAM to be reimbursed for the costs incurred in the litigation. Here, the NAM requests the $120 filing fee for the initial action. Such a request is not unreasonable, and has been granted in the past. *Cooper*, 24 F.3d at 1419. This court chooses to grant this cost now.

The total award for expenses and costs is therefore:

---

16. The NAM relies upon *Douglas v. Baker*, 809 F.Supp. 131, 135 (D.D.C.1992) to support its position that expertise in immigration law should raise the statutory imposed limit. In reaching its decision, the court found that there existed a "paucity of local immigration attorneys willing to take cases at the statutory rate." *Id.* at 136 n. 6. In the case at bar, the NAM has not shown such a "paucity." In addition, this case, while challenging, did not require immigration law expertise in order to proceed with successful litigation. As such, *Douglas* is distinguishable.

The NAM also cites *Nadler v. INS*, 737 F.Supp. 658, 662 (D.D.C.1989). In *Nadler*, the court held that the limited availability of immigration law-

yers allowed for the enhancement of the $75 limit, despite the routine nature of the case and the uncomplicated representation that was required. *Id.* Despite the limited availability of immigration attorneys, this court fails to see how a routine and uncomplicated matter would require an increase in the EAJA limit under the special factors exception. A strict reading of the *Pierce* guidelines simply will not allow it. As such, the NAM's reliance upon *Nadler* is not persuasive.

17. The DOL chose not to address this issue in their opposition brief.

Photocopy Expenses: $1,481.00
On–Line Expenses: $4,001.50
Filing Fee Cost: $ 120.00
TOTAL: $5,602.50

This figure, combined with the fee award of $35,543.09, equates to a total of $41,145.59. The DOL is therefore ordered to compensate the NAM in the amount of $41,145.59 for the reasonable attorney's fees, expenses and costs incurred in the litigation of the action.

### CONCLUSION

The NAM is a qualified party and entitled to an award under the EAJA. Accordingly, this court will order the DOL to pay the NAM a total of $41,145.59 in attorney's fees, expenses and costs incurred in the course of this action.

A separate order shall issue this date.

### ORDER

Pursuant to 28 U.S.C. § 2412(a) and (d) and the attached Memorandum Opinion, this court hereby ORDERS the United States Department of Labor to pay the National Association of Manufacturers a total of $41,-145.59 in attorney's fees, expenses, and costs incurred in the course of this action.

SO ORDERED.